460 So.2d 778 (1984)
Navis Jane MAY
v.
STATE of Mississippi.
No. 54455.
Supreme Court of Mississippi.
November 7, 1984.
Rehearing Denied January 9, 1985.
*779 F. Kent Stribling, Jackson, for appellant.
Edward Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Navis Jane May shot and killed her husband on February 27, 1982. In due course she was indicted for murder. On October 18, 1982, the case was called for trial in the Circuit Court of Rankin County, Mississippi, at the conclusion of which the jury found May guilty of the lesser-included offense of manslaughter, Miss. Code Ann. § 97-3-31 (1972). The Circuit Court has sentenced May to a term of eight years.
From this conviction and sentence, May appeals. She presents a history of abuse and mistreatment by her husband and argues that, as a matter of law, her actions were taken in necessary self-defense and thus constitute justifiable homicide.
May's case evokes sympathy. We have studied it carefully, beyond the errors formally assigned. For the reasons below, we affirm.

II.
John D. and Navis Jane May were married in October of 1960. At the time of the incident in question, John was 70 years old. Navis was 52 and an arthritic. They had lived in a trailer home on Williams Road in Florence, Mississippi for most of the past five years.
On Saturday evening, February 27, 1982, Navis Jane May shot and killed her husband at their home. Of that there is no dispute. The circumstances under which the killing occurred, however, were hotly disputed at trial.
*780 Navis' described a battering husband who had threatened to kill her in the past and had repeated those threats on the night in question; a man who had been drinking that evening and who frequently drank a fifth of whiskey a day; an account of a struggle, a chase, more threats, a fear of being severely beaten with a walking stick, and a shooting after warning shots had failed to stop her angry husband's advance.
The evidence offered by Rankin County Deputy Sheriff Ernest Burnham, however, revealed a different scene. Deputy Burnham testified that he received a call at the Sheriff's Office at approximately 8:00 p.m., February 27, 1982. The caller identified herself as Mrs. J.D. May and said "I've just killed my husband". Deputy Burnham and Officer Kenneth Dickerson promptly went to the May residence where they found John D. May lying on the patio in front of the home. May was dead.
Navis May told Deputy Burnham conflicting versions of what had happened. First she described a struggle and said that she had accidently shot Mr. May.
Subsequently, Navis May told Deputy Burnham that there had been an argument and a scuffle inside after which John May said he was "gonna get away from there". She told him not to leave and then she went back into the house and got the gun, came back out and shortly thereafter the shooting occurred.
At trial Navis Jane May described the sequence of events in considerable detail. Suffice it to say that her trial testimony strongly suggests that she acted in self-defense. That version would have had her firing the shot from behind a deep freeze as her angry drunken husband approached. Deputy Burnham, who had carefully examined the scene of the killing, explained that had Navis May been standing there, she would have been in a muddy area, for it had been raining all day. Deputy Burnham testified that there were no footprints at the end of the patio by the deep freeze. Deputy Burnham also explained that the angle at which the fatal bullet entered John D. May strongly suggested that Navis Jane May could not have fired the fatal shot from the position she contended. Finally, Deputy Burnham testified that when he arrived at the May home Navis Jane May appeared intoxicated.
At trial Navis Jane May testified that John D. May was advancing upon her with a walking stick. No walking stick was found in the hands of the victim, but Navis explained that she had pulled the stick and, because of her arthritis, used it to walk to a gate which had to be opened for the officers to enter. Officer Kenneth Dickerson testified that when he and Burnham arrived they found a pair of bedroom slippers clutched in the two hands of the victim, suggesting, of course, that he could not have also had in his hands a walking stick.

III.

A.
Navis Jane May's first assignment of error  one which is argued with substantially more vigor than the others  is
"The verdict of the jury is contrary to the overwhelming weight of the evidence and the Court erred in failing to direct a verdict of not guilty at the conclusion of all the testimony in the case."
Fairly encompassed in this assignment of error is an appeal from the trial court's denial of May's request for a peremptory instruction at the conclusion of all of the evidence as well as the trial court's denial of her alternative post-trial motions for judgment of acquittal notwithstanding the verdict (j.n.o.v.) or for a new trial. These motions are separate and distinct and perform different offices within our criminal procedural system, although as in the appeal May presents the distinction is frequently blurred.
The motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. It is in effect a renewal of the defendant's request for a peremptory instruction made at the close of all the evidence. It asks the court to hold, as a *781 matter of law, that the verdict may not stand and that the defendant must be finally discharged.
Where a defendant has moved for j.n.o.v., the trial court must consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion  that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fairminded men in the exercise of impartial judgment might reach different conclusions  the motion should be denied.
In other words, once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
The motion for a new trial is a different animal. While the motion for judgment of acquittal notwithstanding the verdict presents to the trial court a pure question of law, the motion for a new trial is addressed to the trial court's sound discretion. Neal v. State, 451 So.2d 743, 760 (Miss. 1984). When he moves for a new trial, a defendant in a criminal case necessarily invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which in pertinent part provides:
The court on written notice of the defendant may grant a new trial on any of the following grounds:
(1) if required in the interest of justice;
(2) if the verdict is contrary to law or the weight of the evidence; ... .
As distinguished from the j.n.o.v. motion, here the defendant is not seeking final discharge. He is asking that the jury's guilty verdict be vacated on grounds related to the weight of the evidence, not its sufficiency, and may be retried consistent with the double jeopardy clause. Tibbs v. Florida, 457 U.S. 31, 39, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652, 659-60 (1982).
That, as a matter of law, the motion for judgment of acquittal notwithstanding the verdict must be overruled and denied in no way affects and little informs the trial judge regarding his disposition of the motion for a new trial. Cases are hardly unfamiliar wherein the court holds that the evidence is sufficient so that one party or the other was not entitled to judgment notwithstanding the verdict but, nevertheless, that a new trial in the interest of justice should be ordered. Hux v. State, 234 So.2d 50, 51 (Miss. 1970); Quarles v. State, 199 So.2d 58, 61 (Miss. 1967); Mister v. State, 190 So.2d 869, 871 (Miss. 1966); Yelverton v. State, 191 So.2d 393, 394 (Miss. 1966); Heflin v. State, 178 So. 594 (Miss. 1938); Conway v. State, 177 Miss. 461, 469, 171 So. 16, 17 (1936).
A greater quantum of evidence favoring the State is necessary for the State to withstand a motion for a new trial, as distinguished from a motion for j.n.o.v. Under our established case law, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence. Pearson v. State, 428 So.2d at 1364.
As we said in Groseclose v. State, 440 So.2d 297 (Miss. 1983)
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. [citation omitted] Any less stringent *782 rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.  440 So.2d at 300.

B.
The heart of May's attack on the jury's verdict is the familiar rule that where the defendant or the defendant's witnesses are the only eye witnesses to a homicide, their version of what happened, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by credible evidence, physical facts or facts of common knowledge. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933); Westbrook v. State, 202 Miss. 426, 432, 32 So.2d 251, 252 (1947). That rule does indeed make it mandatory for the court and jury to accept the testimony of the defendant who testifies that he is acting in self-defense where his testimony is reasonable and where there is no evidence to contradict his version of the homicide. Johnson v. State, 346 So.2d 927, 929 (Miss. 1977). Johnson goes on to provide, however, that
"If there are circumstances shown in the evidence which materially contradict the defendant's version of self-defense, the jury is not required to accept his version, but may consider his version of self-defense along with the conflicting evidence in determining the guilt or innocence of the defendant." 346 So.2d at 929.
Other authorities to like effect include Smith v. State, 394 So.2d 1367, 1369-70 (Miss. 1981); Sartain v. State, 311 So.2d 343, 344-345 (Miss. 1975); Dixon v. State, 306 So.2d 302, 304 (Miss. 1975).
That a defendant's voluntary statement made to law enforcement officers shortly after the incident may conflict in substantial particulars with his or her testimony at trial may be a significant factor in taking a case out of the Weathersby rule. Dixon v. State, 306 So.2d 302, 304 (Miss. 1975); McElwee v. State, 255 So.2d 669, 671 (Miss. 1971); Fortner v. State, 56 So.2d 17, 20-21 (Miss. 1952).
Without repeating it here, the testimony of Deputy Sheriff Burnham regarding the voluntary statements made to him by Navis Jane May, the testimony of Deputy Burnham regarding the physical facts which contradicted May's version of what happened, added to the testimony of Officer Dickerson regarding the slippers found in the hands of the deceased are more than sufficient to bring this case within Johnson and to exclude it from Weathersby. The Fortner case, cited above, on somewhat comparable facts, is to like effect.
Suffice it to say that, when the applicable standards as described above are applied to the evidence in this case, affirmance on this assignment of error is required. The trial judge correctly denied May's request for a peremptory instruction as well as her subsequent motion for judgment of acquittal notwithstanding the verdict of the jury. Furthermore, on this record the trial judge acted well within his discretion when he denied May's alternative motion for a new trial.

IV.
May's Assignments of Error Nos. 2 and 3 arise from separate instances of arguably improper conduct by the district attorney. Twice the prosecutor injected into the trial unrelated and potentially prejudicial matters. Each time the trial judge sustained defense objections but May argues here that the trial judge should have gone further and granted a mistrial.
In the first of these instances, the district attorney asked Navis Jane May if she had shot into her brother's trailer after an argument. The State obviously was attempting to show that the Defendant was a person of violent propensities. The question, however, was never answered as the trial judge promptly sustained the defense objection and instructed the jury to disregard any inference in the question. The defense motion for a mistrial was denied.
In the second instance, the district attorney asked a defense witness if he knew where the Defendant was "living with Mr. Cooper now?" The inference, of course, *783 was that the Defendant was engaged in an illicit relationship with a Mr. Cooper. Here again the defense objected promptly, before any answer could be given. The trial judge sustained the objection and again admonished the jury to disregard the question.
Without doubt, each of the questions at issue was improper. Neither question, however, was answered. The defense objection was made and sustained  and properly so  before an answer could be given. In each instance the defense further moved for a mistrial. This motion in each instance was denied. The trial judge timely explained that the jury was to base their verdict solely upon evidence in the case and that the questions asked by lawyers were not evidence  only the answers given by witnesses. Accordingly, there was no evidence on the two points at issue which the jury could consider. The trial judge further admonished the jury that they should disregard any inference which might be drawn from the question and that they should not speculate regarding any answer that may have been given had the question been allowed.
May assigns as error the failure of the trial judge to grant a mistrial. We do indeed have several cases wherein a reversal has been required where the prosecuting attorney deliberately interjected numerous remarks the probable effect of which was incitement of the jury to prejudice against the defendant: Howell v. State, 411 So.2d 772, 773-77 (Miss. 1982); Forrest v. State, 335 So.2d 900, 903 (Miss. 1976); McDonald v. State, 285 So.2d 177, 179-80 (Miss. 1973); and Morgan v. State, 50 So.2d 375, 378 (Miss. 1951).
In the case at bar the two questions were improper and the objections were correctly sustained. There is nothing in the record, however, to show any bad faith on the part of the prosecuting attorney or any deliberate attempt to prejudice the jury against Defendant. Absent unusual circumstances, where an objection is sustained and the jury is admonished to disregard the question, we will find no reversible error. Herron v. State, 287 So.2d 759, 766 (Miss. 1974) (cases cited therein); see also Evans v. State, 422 So.2d 737, 744 (Miss. 1982); Witlock v. State, 419 So.2d 200, 202 (Miss. 1982); Carrol v. State, 391 So.2d 1000, 1002 (Miss. 1980). We find no such unusual circumstances present here. Assignments of Error Nos. 2 and 3 are denied.

V.
In Assignments of Error Nos. 4 and 5, Navis Jane May launches a two-pronged attack upon Instruction No. S-3  the manslaughter instruction  granted at the request of the State and over her objection. The jury's verdict makes clear that this instruction was outcome-determinative, for that verdict found May's actions unnecessary, and thus manslaughter  rejecting her plea that she acted in necessary self-defense.
The instruction in issue is predicated upon the statutory definition of manslaughter as found in Miss. Code Ann. § 97-3-31 (1972), to wit:
"Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter." [emphasis added]
Instruction No. S-3 actually reads as follows:
The Court instructs the jury that every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter. The Court, therefore, instructs you that if you find from the evidence in this case beyond a reasonable doubt that the defendant, Navis Jane May, unnecessarily killed John D. May, either while she was then resisting an attempt by John D. May to commit any felony, or to do any unlawful act against her, or after such attempt to commit any felony or to do any unlawful *784 act against her, to wit: to assault her; or that she unnecessarily killed John D. May after such attempt to assault her had failed; then you shall find the defendant, Navis Jane May, guilty of manslaughter. [Emphasis added]
May first complains that the instruction was not justified by the evidence. Her argument runs as follows: the indictment charged murder. The evidence, in her view, showed that the killing of John D. May was either murder [Miss. Code Ann. § 97-3-19(1) (Supp. 1983)] or justifiable homicide [Miss. Code Ann. § 97-3-15(f) (1972)]. May argues that presenting to the jury the lesser-included offense of manslaughter offered the jury the opportunity to reach a compromise verdict. She cites LaFontaine v. State, 223 Miss. 562, 78 So.2d 600 (1955) which correctly holds that
"Where a killing is, under the proof, either murder or justifiable homicide, the Court should not give instructions upon manslaughter."  223 Miss. at 572, 78 So.2d at 604.
The problem with May's argument here is that there is substantial evidence in this record to support the giving of a section 97-3-31 manslaughter instruction. May testified that she killed her husband as he was attempting to commit an assault and battery upon her. Still, there is evidence that, even though John D. May may have already committed an assault and battery on her or was in the process of trying to do so, Navis Jane May's actions in killing him were "unnecessary". We held as much when we rejected Assignment of Error No. 1 above.
In this context, it should be emphasized that Navis Jane May's self-defense theory was fairly submitted to the jury. That theory is the other side of the coin  if Navis Jane May's killing of her husband was in necessary self-defense, it was justifiable homicide. If her actions were unnecessary, they constituted section 97-3-31 manslaughter.
At her request two separate instructions were presented the jury on this question. First, the jury was instructed that
... a person claiming the right of self-defense is not required to retreat or to consider whether she could safely retreat. If she is honestly and reasonably in fear of death or serious bodily harm she may stand her ground and use whatever force is reasonably necessary under the circumstances, even to the extent of taking the life of the attacker. [emphasis added]
In addition, the Court instructed the jury that
... if, after reviewing all the evidence, you believe that the fatal shot was fired by the defendant when she had reasonable cause to believe and did believe that she was in imminent and immediate danger of being killed by John May, or of receiving great bodily harm at the hands of John May, then you should find the defendant not guilty, even though it may not appear that the defendant was not at the time in imminent danger of being killed by John May or of receiving great bodily harm at his hands.
Cf. Bebley v. State, 456 So.2d 755, 756 (Miss. 1984) (instruction less favorable to defendant given); Haynes v. State, 451 So.2d 227, 229 (Miss. 1984) (same); Scott v. State, 446 So.2d 580, 583 (Miss. 1984) (same); Robinson v. State, 434 So.2d 206, 207 (Miss. 1983) (same).
Here we emphasize that the weight of the evidence did indeed suggest that John D. May had on the day in question and repeatedly over the years been guilty of acts of violence toward Navis Jane May. More precisely, the evidence established that on the day in question John D. May had, within the meaning and contemplation of section 97-3-31, attempted to commit acts toward his wife which in law could constitute "any felony" or "any unlawful act".
In this context, the critical question is whether the actions of Navis Jane May in shooting and killing John D. May were necessary. The two instructions just quoted told the jury that, if they believed that the actions of Navis Jane May were reasonably necessary, they should find her not *785 guilty on grounds of self-defense. On the other hand, Instruction No. S-3 told the jury that, if they found that the killing was unnecessary, they should find Navis Jane May guilty of manslaughter. We find that the instructions submitted fairly presented the issues to the jury. May's argument that there was no evidentiary support for Instruction No. S-3 is without merit.
Finally, May's argument that Instruction No. S-3 contains an erroneous statement of the law or is confusing or misleading is wholly without merit. The instruction tracks verbatim section 97-3-31 in all relevant particulars. It is no more difficult to read or misleading than the statute itself.
Assignments of Error Nos. 4 and 5 are rejected.

VI.
The Circuit Court of Rankin County has adjudged Navis Jane May guilty of manslaughter, Miss. Code Ann. § 97-3-31 (1972), and has sentenced her to the custody of the Mississippi Department of Corrections for eight years. For the reasons described above, we affirm, but in so doing we are not insensitive to the fact that many features of this case are close to the sterotypical case of the battered wife syndrome. See State v. Kelly, 97 N.J. 178, 190-96, 478 A.2d 364, 375-82 (1984); People v. Minnis, 118 Ill. App.3d 345, 355-56, 74 Ill.Dec. 179, 187-88, 455 N.E.2d 209, 217-18 (1983); Hawthorne v. State, 408 So.2d 801 (Fla.Ct. App. 1982); State v. Anaya, 438 A.2d 892, 894 (Me. 1981); Smith v. State, 247 Ga. 612, 617-19, 277 S.E.2d 678, 682-83 (1981).
Navis Jane May is a 52-year-old woman who suffers a disabling arthritic condition. Among the tragedies of her life was a long marriage to a man eighteen (18) years her senior who drank whiskey, cursed and beat her with regularity. In this context the trial judge appropriately allowed favorable self-defense instructions and, in spite of May's complaint here, a manslaughter instruction which may well have saved her from a murder conviction and a mandatory life sentence.
That we are coming to know more about battered wives, that society and its laws are becoming more sensitive to their plight, does not mean that every battering husband killed by his wife has been killed in necessary self-defense. Battering husbands may well be deserving of society's condemnation. When they batter their wives they should be  and are  subject to prosecution. But they do not all deserve to be killed.
By the same token, what has come to be known as the battered wife syndrome has important informational and explanatory power and is being accommodated by our law. It does not, however, supplant accountability. When a wife kills her husband under circumstances where, objectively speaking, it was not reasonably necessary that she do so in her own self-defense, she should not expect acquittal at the hands of our law, no matter how long she may have been a battered wife.
This case has been tried before a jury drawn from a fair cross-section of the citizens of the county in which John D. and Navis Jane May had lived. The trial judge was alertly neutral  if anything, giving the defendant the benefit of the reasonable doubt. The jury found that her killing of John D. May, objectively speaking, was unnecessary. There is no reason consistent with an enlightened view of our institutional responsibilities why we should disturb that finding.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.