473 So.2d 952 (1985)
Charlie W. GAVIN
v.
STATE of Mississippi.
No. 55610.
Supreme Court of Mississippi.
July 31, 1985.
*953 Hugh L. Bailey, Sr., Bailey & Bailey, Winona, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by John H. Emfinger, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This murder-turned-manslaughter case presents little in the way of novel questions of law. Charlie W. Gavin shot and killed Eula Mae Reece and the only question from the outset has been whether the killing was murder, manslaughter or justifiable homicide. We cannot say that the jury departed from its responsibilities under the law when it found Gavin guilty of manslaughter.
Beyond this, Gavin challenges the admissibility of his confession, saying that it was given when he was in the hospital and under sedation and hence incapable of a voluntary waiver of his privilege against self-incrimination. The uncontradicted record, however, shows the contrary, that at the time of the confession Gavin was experiencing no impairment of his mental faculties. Under these circumstances we have no alternative but to affirm.

II.
On July 2, 1983, between 4:00 and 5:00 p.m., Charlie W. Gavin, the defendant below and the appellant here, went to Bostich's Cafe in Grenada, Mississippi. Eula Mae Reece was an employee at the cafe. Without apparent authorization Gavin took a six pack of beer from behind the counter, whereupon Reece immediately jumped up and struck Gavin in the head with a beer bottle. Within moments blood was dripping onto the floor from Gavin's head.
Apparently stunned, Gavin attended to his wound, and as he could not see it, asked how badly he was hurt. He apologized to Reece for not paying for the beer. The record reflects that Reece had been teasing Gavin and playing around with him before all of this had occurred.
A few minutes thereafter, Reese went to the cash register and started counting money. She was apparently getting ready to close the cafe for the day. There is no evidence at this time that Gavin was under any threat of serious bodily harm. At that point, apparently without warning, Gavin *954 whirled and started shooting, fatally wounding Reece. An autopsy revealed that Reece died from bleeding in her chest cavity and in her lungs. She had four bullet wounds all from bullets that had entered the left side of her body.
After the shooting, Gavin left the cafe and walked a little over a hundred yards when he apparently lost consciousness. He was taken to the Grenada County Hospital where the next day he gave a statement to the law enforcement officers admitting that he shot Reece.
On July 15, 1983, Gavin was charged with the murder of Eula Mae Reece in an indictment returned by the Grenada County Grand Jury. Miss. Code Ann., § 97-3-19(1)(a) (Supp. 1984). He entered a plea of not guilty. On February 1, 1984, the case against Gavin was called for trial, at the conclusion of which the jury acquitted Gavin of the crime of murder but found him guilty of the lesser included offense of manslaughter. Miss. Code Ann., § 97-3-35 (1972). Upon this conviction, on February 2, 1984, the Circuit Court sentenced Gavin to the custody of the Mississippi Department of Corrections for a period of eighteen years.
In due course thereafter Gavin filed a motion for a new trial challenging both the weight and the sufficiency of the evidence. On February 10, 1984, the Circuit Court entered its order overruling this motion. Gavin now appeals to this Court.

III.
Gavin's first assignment of error challenges the trial judge's overruling of his motion to suppress his inculpatory statement. The record reflects that on July 3, 1983, the day following the homicide, Gavin gave a statement to law enforcement authorities at a time when he was a patient at the Grenada County Hospital. In this statement Gavin admitted that he shot Eula Mae Reece. At trial Gavin objected to the State's use of this statement against him on grounds that at the time the statement was given he was under sedation and medication and was experiencing pain and accordingly had a "diminished capacity" to give a voluntary statement.
Here there is no question but that the warnings required under Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966), were given. The giving of the Miranda warnings, however, is only the first step. To render a subsequent inculpatory statement admissible the State must take the second step and prove that the rights of which the accused has been Miranda-warned were thereafter waived  intelligently, knowingly and voluntarily. Jones v. State, 461 So.2d 686, 696 (Miss. 1984); Neal v. State, 451 So.2d 743, 753 (Miss. 1984). In this regard, the State correctly acknowledges that, where a criminal defendant challenges the voluntariness of a confession, he has a due process right to a reliable determination that the confession was in fact voluntarily given. Jackson v. Denno, 378 U.S. 368, 377, 84 S.Ct. 1774, 1781, 12 L.Ed.2d 908, 915 (1964); Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618, 627 (1972).
Here the trial judge, in this preliminary context the trier of the facts, is charged with the determination of whether there has been under the totality of the circumstances a knowing and voluntary waiver of the accused's privilege against self-incrimination. Jones v. State, 461 So.2d 686, 696-97 (Miss. 1984); Depreo v. State, 407 So.2d 102, 106 (Miss. 1981); Lee v. State, 338 So.2d 399, 401 (Miss. 1976).
Determinations of questions such as this, of course, should be made by the trial judge outside the presence of the jury. Where the voluntariness of a confession and the waiver of rights necessarily attendant upon such are put in issue, the State has the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt. Jones v. State, 461 So.2d 686, 697 (Miss. 1984); Bell v. State, 274 So.2d 371, 374 (Miss. 1973); Dover v. State, 227 So.2d 296, 300 (Miss. 1969); Agee v. State, 185 So.2d 671, 673 (Miss. 1966).
*955 The nature of the voluntariness inquiry and the practical and institutional limitations upon our ability to find facts places a premium upon the trial judge's full discharge of his responsibility to make findings of fact on the question of whether Miranda rights have been intelligently, knowingly and voluntarily waived. Where on conflicting evidence the trial judge makes such findings, we will normally affirm. Indeed, we accord to such findings that same level of deference and respect generally given findings of fact made by a trial judge sitting without a jury. See Jones v. State, 461 So.2d 686, 697 (Miss. 1984); Clemons v. State, 316 So.2d 252, 253 (Miss. 1975).
In the case at bar the trial judge made no such findings. Rather, at the conclusion of the in camera suppression hearing, the trial judge merely stated, "The motion [to suppress] is overruled." Back in open court when the confession was offered into evidence, the defense renewed its objection and the trial judge merely responded, "The objection is noted and overruled."
There will be no doubt times when such a cursory handling of the question of voluntariness will place us in an awkward position. We sit as an appellate court, and as such are ill equipped to find facts. Pragmatically speaking it is essential that we have from our trial courts findings of fact upon which we may rely, for, if we had to find the facts anew in every case coming before us, we would become even further bogged down in the dispatch and management of our caseload. Beyond that, even if we wanted to be fact finders, our capacity for such is limited in that we have only a cold, printed record to review. The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped to make findings of fact which will have the reliability that we need and desire. See generally Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983); and Anderson v. City of Bessemer City, N.C., ___ U.S. ___, ___, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518, 529 (1985).
In this context, we have reviewed the evidence regarding the voluntariness of Gavin's waiver of his Miranda rights with some care. Sensitive to our inability to make findings of fact where the evidence is in substantial dispute, it nevertheless appears clear from the record before us that the waiver was voluntary. True, Gavin was in the hospital when the confession was taken. True he was experiencing some pain and discomfort. The record, however, reflects without contradiction that Gavin was advised of his Miranda rights by Officer Stauddy, that he told Officer Stauddy that he had an eleventh grade education, that he signed the waiver of rights, that no force or threats were used or even subtle inducements, that no promises or offers of reward were tendered. The record further reflects that after the statement had been reduced to writing, Gavin read it and struck through a misspelled word and then signed it. The record is devoid of evidence that Gavin was under any sedative or medication that would impair his memory or his ability to voluntarily waive his Miranda rights.
In short, based upon a totality of the circumstances, the evidence in the record before us appears uncontradicted, first, that Gavin's Miranda warnings were given in a constitutionally adequate manner and, second, that he intelligently, knowingly and voluntarily waived those rights and in connection therewith gave a signed written statement to the effect that he shot Eula Mae Reece. Though the trial judge did not supply us with the findings of fact we ordinarily must have to pass upon such a question, the facts in this case are sufficiently uncontradicted that we can say with confidence that the inculpatory statement was obtained consistent with Gavin's constitutional rights and that the trial judge correctly overruled Gavin's motion to suppress. The assignment of error is denied.

IV.
Gavin next assigns as error the trial judge's refusal to instruct the jury peremptorily *956 that he should have been found not guilty. Gavin's argument is that the evidence establishes beyond peradventure that he shot and killed Eula Mae Reece in self-defense. See Miss. Code Ann., § 97-3-15(f) (1972). Our review of the evidence shows Gavin's perception of the evidence to be less than accurate.
Gavin relies heavily on the fact that Eula Mae Reece struck him in the head with a beer bottle, and without dispute this did happen before Gavin lifted so much as a finger toward Reece. As indicated in the statement of facts above, however, there is substantial testimony in the record that following receipt of the beer bottle blow, Gavin did nothing but just stood at the bar for five or ten minutes. Reece went to the cash register and started counting some money preparing to close the cafe. Then at a point in time when Reece had ceased to be the aggressor, see Lancaster v. State, 472 So.2d 363, 365 (Miss. 1985), and when it seems open to great doubt as to whether he was in any danger of serious bodily harm from Reece, see Cook v. State, 467 So.2d 203, 207-208 (Miss. 1985), Gavin shot and killed her.
Where a defendant has requested a peremptory instruction in a criminal case or after conviction moved for judgment of acquittal notwithstanding the verdict, the trial judge must consider all of the evidence  not just the evidence which supports the State's case  in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss. 1984). The evidence which supports the case of the State must be taken as true. Warn v. State, 349 So.2d 1055, 1056 (Miss. 1977); Cochran v. State, 278 So.2d 451, 453 (Miss. 1973). The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the peremptory instruction or judgment n.o.v. is required. On the other hand, if there is substantial evidence opposed to the request or motion  that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusions  the request or motion should be denied.
When the standards described above are applied to the evidence in this case, affirmance on this assignment of error is required. The trial judge correctly denied Gavin's request for a peremptory instruction as well as his subsequent motion for judgment of acquittal notwithstanding the verdict. Cook v. State, 467 So.2d 203, 209 (Miss. 1985); May v. State, 460 So.2d 778, 785 (Miss. 1984); Jones v. State, 442 So.2d 919, 921 (Miss. 1983); Hubbard v. State, 437 So.2d 430, 438-439 (Miss. 1983).

V.
Finally, Gavin assigns as error the trial judge's decision overruling his alternative motion for a new trial. That motion in pertinent part had been made on grounds that the verdict was against the overwhelming weight of the evidence.
While the request for a peremptory instruction or the subsequent motion for judgment of acquittal notwithstanding the verdict presents to the trial court a pure question of law, the motion for a new trial is addressed to the trial judge's sound discretion. May v. State, 460 So.2d 778, 781 (Miss. 1984); Neal v. State, 451 So.2d 743, 760 (Miss. 1984). The motion invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which authorizes the trial judge to grant a new trial if required in the interest of justice or if the verdict is contrary to law or the weight of the evidence. Under our established case law, however, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence. May v. State, 460 So.2d 778, 781 (Miss. 1984); Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983); Pearson v. State, 428 So.2d 1361, 1364 *957 (Miss. 1983). There being substantial evidence in this record that at the time Gavin shot Eula Mae Reece he was in no way subject to any threat of imminent danger or bodily harm, we may only conclude that the trial judge acted well within his discretion when he denied Gavin's alternative motion for a new trial.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.