# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-00775-SCT

*JOHNNY COLLIER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/96 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BOYD P. ATKINSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  S. PAT FLYNN |
| DISTRICT ATTORNEY: | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 5/14/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/4/98 |


**BEFORE PITTMAN, P.J., BANKS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Nine year-old C. H. accused Johnny Collier of fondling her. Collier was convicted in the Circuit Court of Bolivar County, Second Judicial District, of touching a child for lustful purposes and was sentenced, as an habitual offender, to serve ten years in the custody of the Mississippi Department of Corrections. Aggrieved by the verdict of the jury, Collier assigns the following as error:

> **THE TRIAL COURT COMMITTED ERROR IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT BECAUSE THE PROSECUTION FAILED TO PROVE ITS CASE AGAINST THE APPELLANT; THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE; AND, THE VERDICT EVIDENCES BIAS AND PREJUDICE AGAINST THE APPELLANT AND WAS BASED SOLELY UPON SUSPICION AND SPECULATION.**

¶2. After careful consideration of the above issue, we affirm the judgment below.

## I.

¶3. Johnny Collier ("Collier") was indicted on April 19, 1996, by the Grand Jury of Bolivar County for gratification of lust (fondling), pursuant to Mississippi Code Annotated section 97-5-23 (1) (1972), and as an habitual offender pursuant to Mississippi Code section 99-19-81 (1972). Collier had been convicted twice previously of a felony and had been sentenced to two separate terms of one year or more in a penal institution. Collier was tried before a jury in May, 1996.

¶4. Nine year old C.H. ("C.H."), the victim, testified that on September 24, 1995, her mother sent her to Collier's house to ask his girlfriend for some hair gel. According to C.H., she knocked on the door and Collier answered. She stated that she went inside the house and that after she asked him for the gel, he went back into another part of the house and "asked his girlfriend, and then he came back and he felt on my front part and my back." She identified her "front part" as her vaginal area and her "back" as her buttocks. According to C.H., Collier went into another room, came out with a pair of pants in his hand and took out a wadded up bill and put in her hand saying "[d]on't tell nobody about this", adding "[w]hen I come down to your house, you always look beautiful to me." C.H. stated that she then threw the money at him, ran down the road to her house and told her mother what had happened. Additionally, C.H. testified that she did not see any children at Collier's house.

¶5. C.H.'s mother, Dorothy ("Dorothy"), testified that her daughter, upon returning from Collier's, appeared "[w]ild looking and scary like." Upon questioning her as to what was wrong, Dorothy stated that C.H. told her that Collier had "been feeling her all over" and was "feeling all between her legs." Upon receiving that information, Dorothy testified that she called the police. Dorothy, at the Rule 803 hearing, stated that C.H. was "slow" and on cross-examination, she said that C.H. received a disability payment each month for epileptic seizures.

¶6. Detective Ollie White testified that he spoke with Dorothy and C.H. the next day and that C.H. told him what had happened the previous day at Collier's house. He took an oral statement from C.H. in the morning and a taped statement in the afternoon, with the taped statement being taken in the presence of Dorothy and Ms. Cindy Barnes, with Human Services. The statement given to Detective White differed in only one way from the account given by C.H. to Dorothy and to the jury. C.H. told her mother and the jury that the fondling occurred after Collier returned from asking his girlfriend about the gel. According to Detective White, C.H. told him the incident happened before Collier went to talk to his girlfriend.

¶7. Palandra Ross ("Ross"), Collier's girlfriend, testified that Collier came back and asked her if she had any gel. She stated that she followed him back to the front of the house and by the time they got to the front door, C.H. was walking, not running, down the road and that she did not see any pants in Collier's hand nor in the living room. Ross also said that her two boys were in the living room watching television at the time of the alleged occurrence with C.H..

¶8. Collier testified that C.H. did come to his house that day, but did not come into the house, remaining outside, while he went to ask his girlfriend about the hair gel. He stated that when he returned, C.H. was already walking back down the road. Collier denied the allegations made by C.H. that he had fondled her. He stated in his testimony that one of the children was in the front room and the other was in the bathroom. On cross-examination, Collier denied that he had told Detective White that C.H. had come into the house that day. Detective White testified, on rebuttal, that Collier did tell him that C.H. did indeed come into the house on the day of the alleged incident.

¶9. The jury returned a guilty verdict, and the judge sentenced Collier to 10 years in the custody of the Mississippi Department of Corrections without possibility of parole or probation. On June 19, 1996, Collier submitted his motion for J.N.O.V. or, alternatively, motion for a new trial, which was denied by the trial judge on June 24, 1996. From this guilty verdict, Collier now appeals.

## II.

**THE TRIAL COURT COMMITTED ERROR IN DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT BECAUSE THE PROSECUTION FAILED TO PROVE ITS CASE AGAINST THE APPELLANT; THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE; AND, THE VERDICT EVIDENCES BIAS AND PREJUDICE AGAINST THE APPELLANT AND WAS BASED SOLELY UPON SUSPICION AND SPECULATION.**

¶10. Collier's discussion of the above assignment of error implicates both an argument concerning the legal sufficiency of the evidence and an argument that the verdict was against the overwhelming weight of the evidence. Collier apparently does not understand the distinction between the two arguments, combining both arguments into a hodgepodge argument while asking for relief in the form of reversal and rendering at best, and reversal and remand at worst. This Court has stated that these arguments represent motions that "are separate and distinct and perform different offices within our criminal procedural system . . . ." *May v. State*, 460 So. 2d 778, 780 (Miss. 1985).

¶11. Our best statement of the standard of review for sufficiency of the evidence is as follows:

Our concern here is whether the evidence in the record is sufficient to sustain a finding adverse to Wetz on each element of the offense of murder. In the present context we must, with respect to each element of the offense, consider all of the evidence -- not just the evidence which supports the case for the prosecution -- in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987) (citations omitted). If the evidence is found to be legally insufficient, then discharge of the defendant is proper. *May*, 460 So. 2d at 781.

¶12. Our standard of review for the determination of whether a jury verdict is against the overwhelming weight of the evidence is as follows:

"In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997); *Jackson,* 689 So. 2d at 766. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to

stand would sanction an unconscionable injustice will this Court disturb it on appeal. *Herring*, *691 So. 2d at 957*; ***Benson v. State***, 551 So. 2d 188, 193 (Miss. 1989) (*citing* ***McFee v. State***, 511 So. 2d 130, 133-134 (Miss. 1987)).

*Pleasant v. State, 701 So. 2d 799, 802 (Miss. 1997)*. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper. ***May***, 460 So. 2d at 781-82.

¶13. In other words, Harrison's sufficiency of the evidence argument is a question of pure law and is directed to the trial court's denial of his post-trial motion for J.N.O.V., while his argument that the verdict was against the overwhelming weight of the evidence is directed to the trial court's denial of his motion for a new trial and addresses the sound discretion of the trial court. ***Id.*** at 780-81. As such, a greater quantum of evidence is necessary for the State to withstand a challenge that the verdict is contrary to the overwhelming weight of the evidence, as distinguished from the legal sufficiency of the evidence argument. ***Id.*** at 781.

¶14. The crux of Harrison's assignment of error is that the verdict and denial of his motion for J.N.O.V. or, alternatively, motion for a new trial, is based upon the unsubstantiated, uncorroborated, and contradictory testimony of a young child who has been drawing a mental disability check since the age of two. This evidence, he contends, is not sufficient, credible, or substantial. However, when the evidence is viewed in the light of the above stated standards of review, Harrison's argument fails completely.

¶15. First, as to Harrison's assertion that C.H.'s testimony was unsubstantiated and uncorroborated, our case law clearly holds that the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime. ***Christian v. State***, 456 So. 2d 729, 734 (Miss. 1984); ***McKinney v. State***, 521 So. 2d 898, 899 (Miss. 1988); ***Otis v. State***, 418 So. 2d 65, 66 (Miss. 1982) ("Although she was not corroborated as to the actual rape itself, there were other facts surrounding the incident which had corroboration. It is conceded that a person may be found guilty of rape on the uncorroborated testimony of the prosecuting witness") (citing ***Killingsworth v. State***, 374 So. 2d 221 (Miss. 1979) and ***Dubose v. State***, 320 So. 2d 773 (Miss.1975)); ***Allman v. State***, 571 So. 2d 244, 250 (Miss. 1990); ***Goss v. State***, 465 So. 2d 1079, 1082 (Miss. 1985) ("The victim's testimony alone is sufficient, although not corroborated, where it is consistent with the circumstances"); ***Barker v. State***, 463 So. 2d 1080, 1082 (Miss. 1985); ***Blade v. State***, 240 Miss. 183, 188, 126 So. 2d 278, 280 (Miss. 1961); ***Clemons v. State***, 460 So. 2d 835, 838 (Miss. 1984). Beyond that, "[t]his Court recognizes as corroborating evidence the victim's physical and mental condition after the incident, as well as the fact that she immediately reported the rape." ***Christian***, 456 So. 2d at 734; ***Inman v. State***, 515 So. 2d 1150, 1152 (Miss. 1987).

¶16. In the instant case, based on the plethora of case law cited, *supra*, C.H.'s testimony is sufficient to support Collier's conviction. C.H.'s mental state following Collier's fondling of her is consistent with the conduct of one who has been fondled. According to her mother's testimony, C.H. had a "wild" look about her when she returned from Collier's. She reported the incident immediately to her mother, who immediately called the police. The evidence presented in the case *sub judice* not only is indicative of the circumstances and conduct that would surround such an occurrence, but, according

to *Christian* and *Inman*, *supra*, is corroboration of C.H.'s testimony. Collier's argument as to C.H.'s testimony being uncorroborated, and therefore insubstantial to support his conviction, is clearly without merit.

¶17. Secondly, Collier contends that C.H.'s testimony is inconsistent in that she told her mother and the jury that the incident occurred after Collier returned from asking his girlfriend about the gel, while telling Detective White that the fondling occurred before he went to the back of the house. This, Collier asserts, coupled with C.H.'s age and slight mental retardation, casts doubt upon the credibility of her testimony.

¶18. Our case law is axiomatic on the proposition that the jury is arbiter of the credibility of testimony. "It is, of course, within the province of the jury to determine the credibility of witnesses . . . ." *Pleasant*, 701 So. 2d at 802 (citing *Groseclose v. State*, 440 So. 2d 297, 300-01 (Miss. 1983)). "The conflict between the testimony of the appellant and the prosecutrix was properly resolved by the jury." *Christian*, 456 So. 2d at 734. "We are asked to reverse this case on the grounds that there are inconsistencies and contradictions in her testimony. If this be true, it would still be a question for the jury." *Blade*, 240 Miss. at 188, 126 So. 2d at 280; *e.g., Allman*, 571 So. 2d at 253. In the instant case, any inconsistencies found in C.H.'s testimony go the weight and credibility of her testimony, clearly a jury question. In addition, C.H.'s testimony was not at all inconsistent on the issue at the heart of this matter -- Collier's fondling of her. This contention is without merit.

¶19. Collier implicitly asserts that C.H. was an incompetent witness because of her age and slight mental retardation. This Court has stated that

> Mississippi courts generally allow children of tender years to testify if competent. Rule 601 of the Mississippi Rules of evidence provides that every person is competent to be a witness unless they are incompetent or otherwise restricted. It is in the sound discretion of the trial judge to determine the competency of a child witness.

*Mohr v. State*, 584 So. 2d 426, 431 (Miss. 1991). A study of C.H.'s testimony shows that her testimony throughout the trial was, on the whole, consistent, especially on the incident in question. She had the ability to understand and answer questions, and could remember events. The evidence in the record is clear that no one put her up to this. This argument has no merit.

## CONCLUSION

¶20. Collier contends that the uncorroborated, unsubstantiated, and contradictory testimony of a nine year-old, slightly retarded girl is not sufficient to support his conviction for fondling her. Based upon the abundance of case law cited, *supra*, Collier's contention is clearly without merit.

**¶21. CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE AS AN HABITUAL OFFENDER TO TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE TO RUN CONSECUTIVELY WITH ANY OTHER SENTENCE IMPOSED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**