DIAZ, J.,
for the Court:
¶ 1. Nathaniel Washington, Jr. and M.B. Vaughn were convicted on November 13, 1997, by a jury of the Coahoma County Circuit Court of conspiracy to commit grand larceny, grand larceny, and attempted grand larceny in connection with the theft of various merchandise from West Building Materials Store #22 in Clarks-dale, Mississippi. At the same time, Carlton Palmer was found guilty of attempted grand larceny. Washington asserts that he is entitled to a new trial because the jury’s verdict is against the overwhelming weight of the evidence. Palmer and Vaughn, represented by separate counsel, assert that the circuit court erred in allow *399 ing a statement by Vaughn before establishing the corpus delicti of an air compressor alleged to have been taken under Count II of the indictment; that the verdict against Vaughn and Palmer was against the overwhelming weight of the evidence; and that there was insufficient evidence to convict Palmer on Count III, attempted grand larceny. They further contend that the circuit court erred in not granting their motions for a directed verdict of acquittal as well as for a j.mo.v., or in the alternative, for a new trial. Finding no merit to the assignments of error, we affirm the convictions and sentences of Washington, Palmer and Vaughn.
FACTS
¶ 2. On February 18, 1997, Daniel Lawrence, assistant manager of West Building Materials Store # 22 in Clarksdale, Mississippi, went back to the store to retrieve his car after having dinner with his wife. After his wife dropped him off, he realized that his car would not start. He went inside to turn off the alarm system and to get the keys to one of the delivery trucks from which he hoped to jump start his car. As he got into the delivery truck, he noticed a truck, a car and several people outside one of the entry gates to the property. When he turned on the lights of the truck and started to put it into reverse, one of the vehicles, an old green pick-up truck, sped off. He drove over to the gate where he found Clarksdale Police Officer Nathaniel Washington, who was trying to get through the fence and had gotten stuck when his vest got tangled in the gate. Lawrence noticed a generator still in its box as well as the packaging from a large air compressor. Washington reported a break-in and drove off.
¶ 3. Another police officer arrived several minutes later, asked Lawrence what had happened and drove off again. Washington returned. While he and Lawrence were looking things over, Lawrence noticed a delivery truck with the back raised up a foot or so. Inside was the lid to the air compressor box as well as two stoves. Based on what he saw, he told Washington that it had to have been an inside job.
¶ 4. John Harris, the door shop manager at West Building Materials, testified that earlier that day he and Washington had discussed stealing two gas stoves, one for Washington and one for Carl Palmer, a dock hand at West Building Materials, who needed one for the trailer into which he was moving. Harris and Washington talked on the telephone about the stoves two or three more times that day and Washington stopped by the store around lunchtime. Harris, Palmer and “Little Larry” Jones moved the stoves from the warehouse to the delivery truck and a generator to the area back by the fence.
¶ 5. Around 9:00 p.m. that night, Harris and Washington got together at the home of M.B. Vaughn, who also was an officer with the Clarksdale Police Department, and made plans to pick up the stoves and other items on the truck. Washington, who was on duty and in uniform at the time, was designated as the look-out. Harris and Vaughn drove out to West in Vaughn’s old pick-up truck, where they were to meet Palmer. Harris apparently cut a hole through the fence, while Vaughn, who suffers from a congenital back problem, stayed by his truck.
¶ 6. When Harris saw the light from the truck which Lawrence had started, he jumped into Washington’s patrol car and hid in the back seat. Vaughn, meanwhile, fled from the scene in his pick-up truck. Harris testified that once they saw the lights, Washington had no choice but to call in the crime. He further stated that he did not know who had loaded what, if anything, after that, but later that night, he saw the air compressor at Washington’s house.
¶7. On February 19, Investigator Fernando Harris, John Harris’ brother, noting some irregularities in Washington’s handling of the case, decided to confront him about his failure to pursue the truck which *400 he had reported fleeing the scene. He testified that Washington’s account of the burglary “didn’t sound right.” When he asked Washington why he had not pursued the truck,' he was silent. Washington eventually admitted his part in the break-in to Harris. Harris told Washington and John Harris, who also had arrived at Washington’s house, that they had until Friday to turn themselves in or he would lock them up himself.
¶ 8. Washington, Vaughn, Palmer and John Harris[1] were indicted by a grand jury of the Coahoma County Circuit Court on June 9, 1997. Count I of the indictment charged Washington, Harris and Vaughn with conspiracy to commit the crime of grand larceny. Under Count II, they were charged “individually or while aiding and abetting and/or acting in concert with each other” with taking an air compressor from West Building Materials. Count III charged all four men “individually or while aiding and abetting and/or acting in concert with each other” with attempting to take two stoves and an electric generator “by removing said items from their place of display and/or storage and or transporting them to an area from which they could more easily be removed from the premises of West Building Materials Store #22 before being detected in the act of stealing said items.... ”
¶ 9. After a three-day trial, the jury found Washington, Vaughn and Palmer guilty as charged on November 13, 1997. Washington’s motion for j.rno.v., or in the alternative, for a new trial, was denied by the circuit court on December 1, 1997. Palmer and Vaughn filed a motion for judgment of acquittal, or in the alternative, for a new trial, which also was denied by the circuit court. The three men were sentenced on December 17, 1997. Aggrieved by their convictions and sentences, Washington, Vaughn and Palmer now appeal to this Court.
DISCUSSION OF THE LAW
A. Nathaniel Washington, Jr.
I. WHETHER THE JURY’S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 10. In his sole assignment of error, Washington asserts that his conviction should not stand because the only evidence of his guilt comes from accomplice testimony and his own statement, made when he had first awakened and was in a “confused” state of mind. Washington provides us with very little in the way of meaningful argument or authority. We find, however, that there is sufficient evidence in the record to support the jury’s verdict.
¶ 11. When reviewing the sufficiency of the evidence supporting a jury verdict, we look at all of the evidence to determine whether a reasonable, hypothetical juror could find the defendant guilty beyond a reasonable doubt. Jackson v. State, 614 So.2d 965, 972 (Miss.1993). We accept that evidence which supports the verdict, giving the State the benefit of all reasonable inferences flowing therefrom. Id.; Hammond v. State, 465 So.2d 1031, 1035 (Miss.1985). Unless we are convinced that the verdict is so contrary to the weight of the evidence that, if it is allowed to stand, it would sanction an unconscionable injustice, we will not reverse a trial judge’s denial of a motion for a new trial. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).
¶ 12. Without citing any authority, Washington argues that the testimony of accomplices must be viewed with caution and suspicion. While this is a correct statement of the law, Gandy v. State, 438 So.2d 279, 285 (Miss.1983), it does not preclude conviction on the basis of accomplice testimony. In Fleming v. State, 604 So.2d 280, 289 (Miss.1992), the Mississippi Supreme Court stated that one could only be *401 convicted on the basis of accomplice testimony if that testimony was reasonable and n.ot improbable, self-contradictory or substantially impeached. See also Morgan v. State, 681 So.2d 82, 93 (Miss.1996) (distinguishing Fleming, where accomplice testimony was uncorroborated). As in Morgan, the testimony of Washington’s accomplices, particularly John Harris, regarding his participation in the theft was not uncorroborated. Rather, it was corroborated not just by his own early-morning admissions to authorities, but also by the testimony of Lieutenant David Shaw of the Mississippi Highway Patrol and Detective Fernando Harris and Investigator Dale Jones of the Clarksdale Police Department. Further, Harris’s testimony is neither improbable nor unreasonable nor contradictory and substantially impeached. There is no merit, therefore, to the assignment of error.
B. Carlton Palmer and M.B. Vaughn
I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE INTO EVIDENCE A STATEMENT MADE BY VAUGHN PRIOR TO ESTABLISHING THE CORPUS DELICTI
¶ 13. Count II of the indictment charged Washington and Vaughn with the theft of an air compressor, which was never recovered. Palmer and Vaughn first assert that the circuit court erred in allowing the testimony of Walter Davis, an investigator for the Mississippi State Highway Patrol, about statements Vaughn made regarding the theft of the air compressor without first producing the item that allegedly was stolen. At trial, they objected to the admission of any references made to defendants’ statements to authorities about the air compressor. While testifying about Vaughn’s statement, Investigator Davis alluded to the air compressor only in stating that when making his statement, Vaughn indicated that he had gone to West Building Materials to pick up a.stove, but the box that was put into his truck was “a long item that didn’t look like a stove.” ■
¶ 14. Despite the “general ... rule that the prosecution should first submit evidence tending to prove the corpus delicti before introducing into evidence a confession made by an accused person,” it has been stated that “the rule is not without some flexibility as to the order of proof in conjunction with confessions and independent proof of corpus delicti.” Burkhalter v. State, 302 So.2d 503, 505 (Miss.1974). It is not the order of proof that is critical but “the state must establish corpus delicti aliunde an out of court confession of the crime with which the accused is charged” and must present sufficient evidence to establish “that a real and not an imaginary, crime has been confessed.” Id. at 505 (quoting Brooks v. State, 178 Miss. 575, 173 So. 409 (1937)). See also Miskelley v. State, 480 So.2d 1104, 1107-08 (Miss.1985).
¶ 15. Evidence that an air compressor was taken from West Building Supply was not limited to the confessory statements made by Vaughn and Washington. Daniel Lawrence, the store manager who interrupted the crime, testified that he saw the box and wrappings for an air compressor near the hole that had been cut in the fence and the box lid in the truck where the stoves and generator had been secreted. Further, John Harris testified that á compressor had been taken and that at one point, he had seen it at Washington’s house. There was sufficient evidence therefore, beyond the defendants’ statements made to police investigators, to' establish that “a real crime” had been confessed. Accordingly, there is no merit to the assignment of error.
II. WHETHER THE GUILTY VERDICT AGAINST PALMER WAS AGAINST THE WEIGHT OF THE EVIDENCE; WHETHER THE CIRCUIT COURT ERRED IN DENYING HIS MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AT THE CLOSE OF THE STATE’S CASE *402 AND AT THE CLOSE OF ALL EVIDENCE, DENYING HIS MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE, FOR A NEW TRIAL III. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT PALMER’S CONVICTION IN COUNTS I AND III OF THE INDICTMENT
¶ 16. The trial court may set aside the verdict of a jury only when viewing the evidence in the light most favorable to the verdict, no reasonable, hypothetical juror could have found that the defendant was guilty beyond a reasonable doubt. Fleming v. State, 604 So.2d 280, 286 (Miss.1992); Lanier v. State, 533 So.2d 473, 479 (Miss.1988). Where a defendant has moved for j.n.o.v., the trial court must consider all of the evidence and the inferences which may be drawn therefrom — not just the evidence which supports the State’s case — in the light most favorable to the State. May v. State, 460 So.2d 778, 781 (Miss.1984). That evidence which is consistent with the verdict must be accepted as true. Williams v. State, 463 So.2d 1064, 1067 (Miss.1985). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that, having in mind the beyond-a-reasonable-doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury’s verdict allowed to stand. May, 460 So.2d at 781.
¶ 17. Although Palmer’s attorney assigns as error his conviction under Counts I and III, he was indicted and convicted only on Count III, attempted grand larceny for his role in the removal of two gas stoves and an electric generator from the warehouse of West Building Supply. John Harris testified that Palmer had wanted one of the stoves for his new trailer and that he had helped move both the stoves and the generator to more accessible areas of the business. In Palmer’s statement to Lieutenant David Shaw of the Mississippi Highway Patrol, he admitted that he had helped Harris move one of the stoves. At trial, he again admitted helping to move a stove but denied knowing anything more about Harris and the others taking the merchandise. The evidence and inferences that may be drawn therefrom are not such that reasonable jurors only could have found Palmer not guilty.
IV. WHETHER THE CIRCUIT COURT ERRED IN DENYING VAUGHN’S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AT THE CLOSE OF THE STATE’S CASE AND AT THE CLOSE OF ALL EVIDENCE, DENYING HIS MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE, FOR A NEW TRIAL SINCE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A GUILTY VERDICT
¶ 18. Vaughn contends that because he was simply present to provide transportation and had not agreed with the others to steal anything from West Building Supply, there is insufficient evidence to support his conviction. However, as to the conspiracy charge contained in Count I, “an agreement need not be formal or express, but may be inferred from the circumstances, particularly from the acts and conduct of the alleged conspirators.” Thomas v. State, 591 So.2d 837, 839 (Miss.1991). The record indicates that the theft was planned at Vaughn’s house, in his presence. It is not unreasonable to infer from that evidence, as well as his participation in the actual crime, as planned, that Vaughn was a party to the conspiracy *403 to commit larceny. As to Counts II and III, grand larceny and attempted grand larceny, Vaughn’s argument that there is insufficient evidence to support his conviction because he was just there to provide transportation is without merit. The indictment clearly charged him and the others “individually or while aiding and abetting and/or acting in concert with each other.” It is well-established that “[a]ny person who is present, aiding and abetting another in the commission of a crime, is equally guilty with the principal offender.” Doss v. State, 709 So.2d 369, 400 (Miss. 1996). Thus, regardless of whether Vaughn actually assisted in moving the stoves from the warehouse to the truck where it had been stashed earlier in the day,-the evidence that he drove his pick-up truck to the area where the merchandise was to be removed from the property and stood ready to assist in taking it away is sufficient to sustain his conviction.
CONCLUSIONS
¶ 19. There is sufficient evidence in the record to support the convictions of Washington, Palmer and Vaughn. We find no error in the circuit court’s denial of Palmer’s and Vaughn’s motions for directed verdicts of acquittal and of all three men’s motions for new trials. Accordingly, we affirm the judgments of the court below.
¶ 20. AS TO NATHANIEL WASHINGTON, JR., THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION COUNT I, CONSPIRACY TO COMMIT GRAND LARCENY AND SENTENCE OF FIVE YEARS AND PAYMENT OF $1,000 FINE; COUNT II, GRAND LARCENY AND SENTENCE OF FIVE YEARS (SUSPENDED) TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I; COUNT III, ATTEMPTED GRAND LARCENY AND SENTENCE OF FIVE YEARS (SUSPENDED) TO RUN CONSECUTIVELY TO SENTENCES IN COUNTS I AND II, ALL IN THE CUSTODY/SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
¶ 21. AS TO M.B. VAUGHN, THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, CONSPIRACY TO COMMIT GRAND LARCENY AND SENTENCE OF FIVE YEARS AND PAYMENT OF $1,000 FINE; COUNT II, GRAND LARCENY AND SENTENCE OF FIVE YEARS (SUSPENDED) TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I; COUNT III, ATTEMPTED GRAND LARCENY AND SENTENCE OF FIVE YEARS (SUSPENDED) TO RUN CONSECUTIVELY TO THE SENTENCES IN COUNTS I AND II, ALL IN THE CUSTODY/SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
¶ 22. AS TO CARLTON NOEL PALMER, THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION COUNT III OF ATTEMPTED GRAND LARCENY AND SENTENCE OF FIVE YEARS (WITH THREE YEARS SUSPENDED AFTER DEFENDANT HAS SERVED TWO YEARS) IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000.00 IS AFFIRMED. SENTENCE IMPOSED TO RUN CONSECUTIVELY TO ANY SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MeMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.

. Harris entered a guilty plea on August 13, 1997.