WIGGINTON, Chief Judge.
On December 9, 1958, defendant was found guilty of murder in the second degree. Upon denial of his motion for new trial he was adjudged guilty and sentenced to life imprisonment. It is from this judgment and sentence that appeal is taken.
Plaintiff makes two principal points on appeal. He urges that the testimony of the State’s witnesses is so conflicting on the material elements of the offense charged that it cannot be said that defendant’s guilt has been established beyond a reasonable doubt. He fervently asserts that the State’s failure to remove from the victim’s body the bullet which caused her death, and prove by expert ballistic evidence that this bullet was fired from defendant’s gun, prejudiced him in his constitutional right to a fair trial.
Edwin W. Coachman, the defendant, and Berdell Coachman, his deceased wife, experienced domestic difficulties, and on at least three occasions had separated, the wife and her two small children returning to the home of her mother and step-father. During the period of the last separation defendant was accustomed to stopping by *191 his in-law’s home and visiting with his wife and children.
On June 2, 1958, defendant visited his children in the usual manner. His wife came to the passenger side of his automobile which was closest to her home, and engaged in conversation with him. The visit concluded and as the wife walked toward the house she told defendant to “go to the devil”. Defendant reached in the glove compartment of his car, procured a 32-caliber revolver and commenced to fire in the direction of the wife. She fell to the sidewalk, and after firing additional shots toward the home of deceased’s parents, defendant drove directly to the Sheriff’s office where he voluntarily surrendered himself, stating “I just shot my wife.”
In the course of the trial, the State produced five eyewitnesses who testified to defendant’s shooting spree. Some of these testified that he shot the deceased from his car, while others testified he also shot her while standing over her fallen body. Although it is apparent from examining the testimony of these witnesses that there is some conflict in their recollections of certain details concerning the shooting incident, a careful review of the record reveals that the conflicts relate to immaterial phases of the res gestae and not to the material elements of the offense. It is not disputed that defendant called upon his wife with a 32-caliber revolver in the glove compartment of his auto, loaded and readily available. Nor is it controverted that with this gun he fired several times in the direction of his wife, at least one of the bullets from which entered her body.
An examination of the deceased’s body showed that two bullets struck her. One entered through the back and lodged in the heart cavity. The fatal bullet which caused her death entered the right temple and lodged near the back of the skull. The bullet in the heart cavity was removed and a ballistics test conclusively proved that this bullet had been fired by defendant’s gun. The bullet in the skull was never removed.
It is the theory of the defense that the step-father, who appeared at the front door of his house just as the deceased started walking away from defendant’s automobile, fired at defendant who, in self-defense, returned the fire while seated in his car. The wife, who was in the direct line of fire, was 'accidentally hit in the back by defendant’s bullet and in the head by the fatal shot from the step-father’s gun.
All the State’s witnesses testified that the step-father did not fire a gun at defendant and all declined any knowledge of having seen him with a firearm. Defendant’s sole eyewitness who arrived on the scene after the altercation commenced testified that he saw the step-father shooting from the porch in the direction of defendant’s car, but he conceded that he never saw the gun which the father was allegedly shoooting. Further, this witness’ testimony at the trial to the effect that the step-father was shooting prior to the deceased’s falling to the ground conflicted with his prior testimony given at the preliminary hearing wherein he stated that the deceased was already lying on the sidewalk when the step-father commenced to shoot.
It appears from an examination of the testimony of all the witnesses that there was sufficient evidence from which the jury could reasonably have concluded that the step-father did not in fact fire or brandish a firearm at defendant. It was reasonable for the jury to believe that the bullet wounds in the deceased’s body were caused by defendant’s act of shooting. That these wounds caused the death of the deceased there can be no doubt.
Simply stated, defendant contends that the State committed error fatal to its case when it neglected to have the head bullet removed from the deceased’s skull and submitted to a ballistics test as was the bullet that pierced the victim’s heart cavity. That a ballistics test of the head bullet would have provided a foolproof means of determining whether or not it came from defendant’s gun, we do *192 not doubt. However, to say that the State carried the burden of rescuing the bullet from the skull while knowing or believing that it had other sufficient evidence to establish defendant’s guilt, transcends the realm of reason. It is true that the State must establish beyond a reasonable doubt all the essential elements of the crime charged, but to say that it must exhaust all the available evidence that bears upon a defendant’s guilt is a novel theory of law for which research finds no support. Our Supreme Court early recognized that when a wound from which death might ensue has been inflicted with murderous intent, and has been followed by death, the burden of proof is upon the party inflicting the wound to make it appear to the satisfaction of the jury that death did not result from such wound, but from some other cause.[1]
It is the general law of this state that when the prosecution has produced evidence of the connection between the act complained of, and the death, it is the duty of the defendant to come forward with evidence to show that death resulted from some other cause.[2] This rule is not only supported by logic, but is basic in the very nature of adversary proceedings. If one has a defense, he must avail himself of it and not depend upon his adversary as a devil’s advocate.
It is noted that defendant must have been well aware of the importance, if any, of the head bullet long before trial. The trial commenced over six months after the preliminary hearing, at which time it was known that only one bullet had been removed from the body. The law provides ample means by which defendant could have discovered the evidence on which he claims proof of his innocence depends. It is difficult to conceive of a reason why only now on appeal defendant demands its production and examination.
It appearing that the evidence is wholly sufficient to justify the verdict of guilt, the judgment of the lower court is affirmed.
STURGIS and CARROLL, DONALD K., JJ., concur.

. Edwards v. State, 1897, 39 Fla. 753, 23 So. 537.

. Tongay v. State, Fla.1955, 79 So.2d 673; Hopper v. State, Fla.1951, 54 So.2d 165; Edwards v. State, note 1, supra.