347 So.2d 352 (1977)
Morris TALBERT
v.
STATE of Mississippi.
No. 49736.
Supreme Court of Mississippi.
May 11, 1977.
Rehearing Denied July 13, 1977.
William O. Semmes, Grenada, for appellant.
A.F. Summer, Atty. Gen. by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
*353 Before PATTERSON, SUGG and WALKER, JJ.
WALKER, Justice, for the Court:
Morris Talbert was indicted and tried in the Circuit Court of Grenada County, Mississippi, for the murder of E.W. Gant. The jury found him guilty as charged, and the court sentenced him to life imprisonment. In his appeal, he contends that evidence of his confession was improperly admitted. He contends that the state did not present proper proof of the victim's cause of death, and further argues that the evidence taken as a whole does not support the jury's verdict. He also complains of the refusal of several requested instructions. Only two of these assignments merit discussion.
On the morning of Saturday, September 20, 1975, D.H. Lemley, a route salesman for Colonial Bread, found Mr. Gant lying on the floor of his small country store. He testified: "... Mr. Gant was laying on the floor. His head was all messed up. Blood was all over the store, on the furniture and everything."
Mr. Gant was carried to the Grenada County Hospital, where he was placed in intensive care under the supervision of Dr. D.L. Harrison, Jr. In his testimony, Dr. Harrison described Gant's injuries in detail:
There was a deep laceration of the left occipital, the back side of the scalp, the length of which was approximately four inches, and coming in a diagonal fashion across the scalp. Then, there was another laceration on the right temple area which crossed over his head, the bridge of the nose, and extended beneath the eye. These lacerations were very irregular. These were ragged and went down through all layers of the soft tissue of the acalp (sic) and face to the bony structure or bony structures of the skull, the nose, and the face and to his head.
Dr. Harrison further testified that the fixed and dilated condition of the pupil of Gant's right eye "indicated ... that he had brain injury and increased intercranial pressure, pressure within the skull from the brain injury." From his observation of the victim, Dr. Harrison concluded that "his injuries were severe enough that I felt that death was imminent."
Because of Gant's critical condition, Dr. Harrison ordered him transferred to the Methodist Hospital in Memphis. Dr. Harrison did not see the victim after he left Grenada. Mr. Gant's son testified that his father died in Memphis the next day, Sunday, September 21 at 8:10 p.m.
Dr. Harrison testified that, based upon his observation of the victim on September 20, Mr. Gant died as a result of the massive head injury which he had described to the court. On cross-examination, Talbert's attorney asked Dr. Harrison whether there might have been some independent and intervening factor which had caused Gant's death after he left Grenada. Referring to the head injury, Dr. Harrison replied, "I believe that this was the primary cause, the primary cause of his death. I don't believe there was any other significant or secondary  significant secondary or contributing cause." In response to further questions, Dr. Harrison testified that he had spoken with the physicians at the Methodist Hospital and had examined their records, finding no evidence of any intervening cause of death.
Talbert vigorously argues that Dr. Harrison's testimony was not sufficient to establish the cause of death. Dr. Harrison did not see Mr. Gant from the time he left Grenada on Saturday morning until the time he died in Memphis on Sunday night. Talbert contends that Dr. Harrison's opinion is therefore based on hearsay reports from the doctors in Memphis. Finally, he contends that the best evidence rule required the state to prove the cause of death by the testimony of the doctors in Memphis who cared for Mr. Gant during the last twenty-four hours of his life.
We believe that the cause of Gant's death was adequately proved by Dr. Harrison's report of his observations on the morning of September 20. We find no direct precedent for this situation in our reported decisions, and no cases are cited to *354 us by either Talbert or the state. However, we believe that the most reasonable rule is stated in 40 C.J.S. Homicide § 186 (1944):
When a wound from which death might ensue has been inflicted with murderous intent and has been followed by death, the burden of proof is on accused to show that death did not result from such wound, but from some other cause.
State v. Johnson, 36 Del. 341, 175 A. 669 (Ct. of Oyer & Terminer 1934); Land v. State, 156 So.2d 8 (Fla. 1963), cert. denied, 377 U.S. 959, 84 S.Ct. 1635, 12 L.Ed.2d 503 (1964); Hopper v. State, 54 So.2d 165 (Fla. 1951); Penton v. State, 114 So.2d 381 (Fla. App. 1959); Coachman v. State, 114 So.2d 189 (Fla.App. 1959). In Mississippi the burden of proof never shifts from the prosecution in a criminal case. Pittman v. State, 297 So.2d 888, 891 (Miss. 1974). However, the defendant has the duty to go forward in presenting evidence to substantiate matters raised in defense. See, e.g., Alston v. State, 258 So.2d 436, 438 (Miss. 1972). We hold that Talbert had the duty to go forward and present evidence from which the jury could infer an intervening cause of death.
In this case, Dr. Harrison described Gant's injuries in excruciating detail. His opinion at the time of his observations was that death was imminent because of the head injuries inflicted by this brutal beating. Mr. Gant in fact died the next evening. With this testimony, the state met its burden of proof. It had established facts from which the jury could infer beyond a reasonable doubt that Mr. Gant died from the beating inflicted upon him in the course of the robbery. Talbert introduced no evidence whatsoever to establish that any other agency could have caused Gant's death.
The best evidence rule did not require the state to present the doctors from Memphis who attended Gant at the time of his death. The best evidence rule applies only to documentary evidence. 32A C.J.S. Evidence § 782 (1964).
Nor was Dr. Harrison's opinion as to the cause of death based upon hearsay. His testimony clearly indicates that his opinion was formed by his personal observations on September 20. It is unimportant that his opinion was later confirmed by his conversations with the doctors in Memphis. He did not rely on those consultations in forming his opinion. It should also be noted that reference to these conversations was brought out by Talbert's attorney on cross-examination, and not by the prosecution.
This holding does not modify or detract from our holding in Gilleylen v. State, 255 So.2d 661 (Miss. 1971). That case involved the testimony of a pathologist who based his opinion on the report of a technician. We held that the state was required to present the testimony of the technician because of the defendant's constitutional right to be confronted with the witnesses against him. Id. at 663. In this case, Dr. Harrison did not base his testimony on his conversation with the doctors in Memphis. Therefore, there was no need to introduce their testimony into evidence.
We therefore conclude that the state properly established the cause of Mr. Gant's death.
Talbert further contends that the trial court improperly admitted evidence of his confession. During the hearing on Talbert's motion to suppress, it was established that Talbert was properly advised of his rights immediately after his arrest. Talbert denied any knowledge of the crime, and the attorney appointed to represent him advised him not to make any statements to the authorities. However, Deputy Sheriff Doyle Nail testified that on the afternoon of September 25, as he was carrying some cigarettes back to Talbert's cell, the prisoner voluntarily admitted his guilt, without any questioning by the deputy. Nail reported that Talbert said:
Mr. Doyle, I lied about Gant's store. I was there, but it didn't happen like Thompson and Terry said it did in the store. We all three were in the store and Thompson began to beat Mr. Gant with a tire tool and I taken the tire tool away from Thompson and he went outside and *355 got another piece of iron and came in and finished beating him while me and Terry looked for money behind the counter.
In his testimony on the motion, outside the hearing of the jury, Talbert did not contend that he had been coerced or intimidated. Rather, he denied making the statement at all. Since no question of voluntariness was presented, the court ruled "that the statement is admissable (sic) as a voluntary statement, the question of whether he made it or not being one for the jury."
Talbert contends that the court had the responsibility of determining whether or not the statement was actually made. In support of this proposition, he relies on this language in Morroco v. State, 204 Miss. 498, 508, 37 So.2d 751, 752 (1948):
With further reference to confessions, we point out that there are two questions which the Court must decide on a preliminary investigation. The first of these; was there a confession; and, second, was it free and voluntary?
This language must be considered in light of the unique circumstances of the Morroco case. The defendant was a Mexican who spoke only broken English. The sheriff had questioned him in English, and Morroco had responded as best he could. The sheriff later wrote down his understanding of Morroco's answers, and read the statement back to him. Morroco then said the statement was "all right." In that case, it was clear that a statement had been made, and that it had been made voluntarily. The only issue presented was whether it had been made competently, whether Morroco could understand the statement read to him by the sheriff. We held that to be a question for the court. Id. at 508, 37 So.2d at 752. In this sense, Morroco is similar to Brooks v. State, 242 So.2d 865, 868 (Miss. 1971), where the defendant claimed he was too drunk to make a competent confession. We found that to be an issue for the trial judge. Thus, it is apparent that when we said in Morroco that the trial court must decide whether there was a confession, we did not mean that the trial court ought to decide whether a statement was made, but whether the statement made was competent to constitute a confession.
The true rule, as applied by the trial court in this case, is found in Weathers v. State, 237 So.2d 441 (Miss. 1970). In that case, the police officer testified that a confession had been made, and the defendant claimed that it had not. We held, "The conflict between Weathers and the officer as to whether Weathers had, in fact, made the statement attributed to him created a factual issue, the resolution of which lay peculiarly within the province of the jury." Id. at 442. Thus, the court properly admitted the testimony of Deputy Sheriff Nail regarding Talbert's confession. The jury was free to decide whether the statement had been made, and to decide what weight to give it.
We conclude that the evidence contained in the record is sufficient to support the jury's verdict. We find no merit in Talbert's remaining assignments of error. Therefore, his conviction and sentence must be affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, BROOM and LEE, JJ., concur.