ROBERTSON, Justice,
for the Court:
Jim Pat Terry was jointly indicted, along with G. D. Thompson and Morris Talbert, in the Circuit Court of Grenada County, Mississippi, for the murder of E. W. Gant. In a separate trial, the jury found Defendant Terry guilty as charged, and the court sentenced him to life imprisonment.
There were seven assignments of error, five of which can be disposed of with the statement that this was a classic jury question on disputed facts, and there is ample evidence in the record to justify the jury’s finding that Terry was guilty beyond a reasonable doubt of the murder of E. W. Gant.
A chronology of the facts was excellently set forth in the companion case of Talbert v. State, 347 So.2d 352 (Miss.1977).
Suffice it to say that E. W. Gant, an 89-year-old country store operator in excellent health, was brutally beaten to death on Friday night, September 19, 1975. Dr. D. L. Harrison, Jr., a physician and surgeon of Grenada, Mississippi, was summoned to the emergency room of the Grenada County Hospital on Saturday morning, September 20, 1975. He personally examined Mr. Gant. Dr. Harrison testified:
“A Mr. Gant had a massive head injury. This was composed of multiple and deep lacerations of the face and scalp. He was semi-conscious at the time I saw him, and his right pupil of the right eye was dilated and fixed.
“Q Dr. Harrison, would you explain to us the significance of the right eye’s dilation and fixed state?
“A Yes, this indicated to me that Mr. Gant had a massive intercranial, or brain, injury.”
*775 After examining xrays, Dr. Harrison had Mr. Gant removed to a Memphis hospital where he could be examined and treated by neurosurgeons. He died Sunday night, September 21, from his injuries.
His son, Edward E. Gant, testified that he saw his dead body at the National Funeral Home in Grenada after it had been returned from the Methodist Hospital in Memphis.
In his seventh assignment of error, the appellant contends that Dr. Harrison should not have been allowed to testify as to the cause of death because he was not present in the Memphis hospital when Gant passed away “nor did he sign the death certificate”.
This same question was raised in the Tal-bert case, was extensively discussed and answered adversely to the contention of the appellant. We adhere to our ruling in Tal-bert.
The only other assignment of error that merits discussion is the appellants’s contention that the court erred in allowing the confession to be introduced over the objection of the appellant. At the eviden-tiary hearing, outside the presence of the jury, investigator Bruce Patridge of the Mississippi Highway Patrol, and Deputy Sheriff Doyle Nail of Grenada County, testified as to the explanation of his rights to Terry and his signing of two waivers of his rights, which was witnessed by them. One waiver of rights was signed by Terry and witnessed by them at 1:15 P.M., September 21, 1975, and the other at 1:30 P.M., September 21,1975, just before Terry made his statement. Both officers testified that there was no force, no duress, no threats and no promises. The testimony of these two officers was uncontradicted, as the defendant offered no testimony at this preliminary hearing nor later before the jury. The two signed and witnessed waiver of rights and the signed and witnessed statement, consisting of two pages each page being signed by defendant Terry, were admitted as full exhibits. The statement says:
“I Jim P. Terry make the following statement. I had G. D. Thompsons car all day Friday September 19 and I went to the Hospital and picked G.D. up and he took me home. G. D. came back to my house about 7:00 o’clock that night and picked me up. Morris Talbert was with G.D. when he picked me up. Morris, G.D. and myself came to Grenada on Union street. We were traveling in G.D. Thompson’s black Mustang 69 or 70 model. We stayed on union street until about 7:30 p. m. then we left, drove down Car-rollton road, on the way down Carrollton road Morris said we ought to rob Mr. Gant and I said man we ought not to do that. Thompson was driving, parked the car across bridge on gravel road. This was about 8:00 o’clock P.M. We all three, got out of car walked back to store. We stood along side store for a few minutes and then Morris went inside store. After Morris had been inside about ten seconds, G. D. walked inside store and I was standing in door. When I walked to door Morris was hitting Mr. Gant with something, then Mr. Gant fell to the floor and I turned around and walked off the store porch. G. D. and Morris came out behind me then we ran back the car. We got in the car and went to the 7-11 club until about midnight, then we left, came back to Grenada and let Morris out on union street. Then G. D. and myself went home, G. D. carried me to my house, he left and I went to bed.”
After the state rested, the defense rested without putting on any witnesses.
L. D. Mitchell Sr. testified that he knew G. D. Thompson’s car, that he saw Thompson’s black Mustang parked about the length of two football fields from Gant’s store about 7:45 p. m. on September 19,1975. He drove back by the place where Thompson’s car was parked about 8:55 p. m., and the car was not there.
The jury being amply justified from the record in this case in finding Jim Pat Terry “guilty as charged” beyond a reasonable doubt, the conviction and sentence are affirmed.
AFFIRMED.
*776 PATTERSON, C. J., INZER and SMITH, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.