## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00848-SCT

*CORNELIUS CHARLES GODBOLD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/1997 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RAYMOND OSBORN BOUTWELL, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DUNNICA O. LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 1/28/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/30/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Cornelius Charles Godbold (hereinafter Godbold), appeals from the circuit court of Lincoln County where he was indicted in a multi-count indictment with kidnaping, possession of cocaine with intent to distribute, simple assault on law enforcement officer (two counts) and possession of stolen property in violation of Miss. Code Ann. § § 97-3-53, 41-29-139, 97-37-1, and 97-17-70. Judge Keith Starrett presided at the jury trial where Godbold was found guilty of unlawful possession of cocaine and guilty of possession of stolen property. The trial court sentenced Godbold to serve a term of three years for possession of cocaine and five years for possession of stolen property to run consecutively, in the custody of the Mississippi Department of Corrections. The last two years to be served on post release supervision. After denial of post-trial motions, the instant appeal was timely noticed.

### STATEMENT OF THE FACTS

¶2. On October 1, 1996, Robert Thaddison spoke with Officer Frank Leggett (hereinafter Officer Leggett)

concerning an alleged kidnaping and aggravated assault which was allegedly perpetrated upon him by Godbold on or about September 30, 1996. Mr. Thaddison signed an affidavit concerning these matters on October 1, 1996. Following this interview with Mr. Thaddison and his signing an affidavit to that effect, an arrest warrant was issued on October 1, 1996, for the arrest of Godbold.

¶3. On October 4, 1996, Godbold called the Sheriff's Office to inquire about any charges pending against him concerning this matter. Officer Leggett advised Godbold that he needed to speak with Godbold in person. Godbold came to the Sheriff's Office and spoke with Officer Leggett concerning this incident involving Mr. Thaddison. Officer Leggett did not advise Godbold of the arrest warrant which had already been issued for his arrest. Instead, Officer Leggett informed Godbold of the charges alleged against him by Mr. Thaddison and then read Godbold his Miranda rights and obtained a signed waiver of those rights before beginning discussions with Godbold.

¶4. During these discussions, Godbold admitted owning a .45 caliber pistol. Based on the information received during this conversation with Godbold and the interview with Mr. Thaddison, Officer Leggett made out an affidavit in pursuit of a search warrant. Judge B. J. Price then issued a search warrant for Godbold's mobile home, surrounding appurtenances, and two motor vehicles.

¶5. During the execution of this search warrant, Godbold ran to the bathroom of his mobile home and attempted to flush crack cocaine down the commode. Officer Leggett and various other officers who were there stopped Godbold from flushing the cocaine and seized it. In addition to the seized cocaine, the policemen seized various other items from Godbold's residence - none of which were listed on the search warrant. Among these other items that were seized, three items were found to be stolen: a Coleman generator, a Sunbeam grill, and a Murray lawn mower.

¶6. Godbold was convicted at the trial court of possession of cocaine and sentenced to three years in the Mississippi Department of Corrections, and was convicted of possession of stolen property and sentenced to five years in the Mississippi Department of Corrections, the sentences to run consecutively. The last two years were to be served under post release supervision. Godbold appeals on the following issues which will be addressed in turn:

**I. TRIAL COURT ERRED IN NOT SUPPRESSING PHYSICAL EVIDENCE THAT WAS THE RESULT OF AN ILLEGAL AND UNLAWFUL SEARCH AND SEIZURE.**

**II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OF STOLEN MERCHANDISE SEIZED AS THE RESULT OF AN ILLEGAL SEARCH AND SEIZURE.**

**III. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DEFENDANT'S MOTION FOR DIRECTED VERDICT FOR FAILURE OF THE STATE TO MAKE A CASE OF RECEIVING STOLEN MERCHANDISE AGAINST THE DEFENDANT.**

**IV. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DEFENDANT'S MOTION FOR MISTRIAL BASED ON IMPROPER COMMENT ON THE EVIDENCE.**

**V. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DEFENDANT'S MOTION TO EXCLUDE EVIDENCE BASED ON THE STATE'S FAILURE TO PRODUCE ACTUAL PROOF OF PHYSICAL EVIDENCE OF THE STOLEN MERCHANDISE.**

¶7. Issues one, two and three will be addressed together.

**I. TRIAL COURT ERRED IN NOT SUPPRESSING PHYSICAL EVIDENCE THAT WAS THE RESULT OF AN ILLEGAL AND UNLAWFUL SEARCH AND SEIZURE.**

**II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OF STOLEN MERCHANDISE SEIZED AS THE RESULT OF AN ILLEGAL SEARCH AND SEIZURE.**

**III. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DEFENDANT'S MOTION FOR DIRECTED VERDICT FOR FAILURE OF THE STATE TO MAKE A CASE OF RECEIVING STOLEN MERCHANDISE AGAINST THE DEFENDANT.**

¶8. In addressing these issues collectively, the first step in the analysis goes to whether there was a valid search warrant. Godbold testified at the trial that he made the first contact with the Sheriff's Department. According to Godbold's testimony, Officer Leggett stated that he needed to talk with Godbold and Godbold complied by voluntarily going to the Sheriff's Office to speak with Officer Leggett (the Officer in charge of the investigation). Godbold testified that another officer was present at their meeting and that the statements at that meeting were tape recorded. Godbold testified that Officer Leggett did tell him there was a complaint that had been made against Godbold but did not tell him that an arrest warrant had already been issued for Godbold's arrest.

¶9. Officer Leggett testified at the trial that he had been investigating an alleged incident of kidnaping and aggravated assault in which Godbold was the alleged perpetrator. Pursuant to an affidavit made by the alleged victim, a warrant for Godbold's arrest had been obtained on October 1, 1996. Officer Leggett testified that he did talk with Godbold after having obtained the arrest warrant without informing Godbold of that warrant. Upon being asked why he did not arrest Godbold prior to talking with him about the incident, Officer Leggett testified: "I was looking into the case further. We have a lot of cases where people come and say 'so and so' done this to me, and these are serious charges. I wanted to be able to corroborate all the charges that was being alleged against Mr. Godbold."

¶10. Officer Leggett further testified that before he began discussions with Godbold at this meeting he read Godbold his Miranda rights and obtained a signed waiver from Godbold. At no time during this discussion between Godbold and Officer Leggett did Godbold ever invoke his right to remain silent or his right to the presence of his attorney. Their conversation concluded, according to Godbold's testimony at his trial in this way:

After I got through talking to Mr. Frank Leggett I asked him was I free to go, and he said 'yes, you is.' [sic] He asked me to bring in a .45 [caliber pistol]. I said I'll look and see if I have it. By that time I had called my lawyer, [later, not during this questioning] which is you, [Mr. Boutwell] to see what you said, and I went on home and went to look for the .45 [caliber pistol] and it wasn't there. About two days later Mr. Frank Leggett called me on the phone asking me if I was going to bring the gun in and I told him I was looking for it and hadn't found it.

¶11. Under the Fifth Amendment to the United States Constitution, persons who are undergoing custodial interrogation have the right to the presence of their attorney if they desire their attorney's presence. *Edwards v. Arizona*, 451 U.S. 477 (1981), *Miranda v. Arizona*, 384 U.S. 436 (1966). If Godbold

were to have asked for the presence of his attorney and it had been denied him we would then be forced to determine whether this constituted custodial interrogation. "The test for whether a person is 'in custody' is whether a reasonable person would feel that she was in custody. That is whether a reasonable person would feel that she was going to jail - and not just being temporarily detained." *Hunt v. State*, 687 So.2d 1154, 1160 (Miss. 1996) (quoting *Compton v. State*, 460 So.2d 847, 849 (Miss. 1984)). "The officer's subjective intent is irrelevant." *Hunt v. State*, 687 So.2d 1154, 1160 (Miss. 1996) (quoting *Stansbury v. California*, 511 U.S. 318 (1994)).

¶12. *Hunt* lists the factors courts use to determine whether custodial interrogation occurred:

> (a) the place of interrogation;
>
> (b) the time of interrogation;
>
> (c) the people present;
>
> (d) the amount of force or physical restraint used by the officers;
>
> (e) the length and form of the questions;
>
> (f) whether the defendant comes to the authorities voluntarily; and
>
> (g) what the defendant is told about the situation.

*Hunt v. State*, 687 So.2d 1154, 1160 (Miss. 1996).

¶13. Applying these factors to the facts of the present case it becomes apparent that Godbold was not undergoing custodial interrogation. The first contact between the parties was made by Godbold, not Officer Leggett. Officer Leggett advised Godbold that he needed to talk with Godbold in person. Godbold was questioned by Officer Leggett in Leggett's office, not in an interrogation room. The record does not specify the exact time of the meeting but Officer Leggett was in his office as were other Sheriff's Office employees so it was during regular office hours. Officer Leggett, one other Sheriff's Office employee, and Godbold were the only people present at the meeting. No force or physical restraint was used to get Godbold to the meeting; he came voluntarily. The exact questions are not duplicated in the record, but the allegations against Godbold - kidnaping and aggravated assault - were discussed, as was Godbold's ownership of a .45 caliber pistol which was allegedly involved in those alleged crimes.

¶14. Officer Leggett did not tell Godbold that there was an arrest warrant that had been already issued for Godbold's arrest at the time of this meeting. However, there are no statutes or court rules which say you must execute an arrest warrant at the very first opportunity you have. In fact, Miss. Code Ann. § 99-3-3 states: "Arrests for criminal offenses . . . may be made at any time or place."

¶15. Even if there had been custodial interrogation here, there still was no Fifth Amendment right to counsel violation because Godbold, during this entire discussion, never requested the presence of an attorney. Godbold had been orally advised of his rights and had signed a waiver of those rights.

¶16. "The right to have an attorney present must be 'specifically invoked.'" *Holland v. State*, 587 So.2d 848, 856 (Miss. 1991), (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). This Court in *Holland* further stated, "custodial interrogation must be preceded by advice to the putative defendant

regarding the Fifth Amendment rights to remain silent and to have an attorney present." *Holland v. State*, 587 So.2d 848, 855 (Miss. 1991), (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).

¶17. In the instant case, even assuming *arguendo* that this was custodial interrogation, Officer Leggett read Godbold his rights and obtained a written waiver of those rights, and subsequent to that, Godbold never invoked his right to remain silent or his right to the presence of an attorney. Therefore, none of Godbold's rights were violated by this interview of him by Officer Leggett.

¶18. During this discussion between Godbold and Officer Leggett, information was obtained which served as the basis for a search warrant to search Godbold's mobile home and all appurtenances thereto, and two motor vehicles. The issue then becomes whether the affidavit for a search warrant and the sworn testimony of the officer stated sufficient facts and circumstances to enable the justice court judge to ascertain that probable cause existed for the issuance of the search warrant. This court stated in *Lee v. State* that "probable cause exists when the facts and circumstances in a given situation are sufficient to warrant a man of reasonable caution to believe that seizable objects are located at the place to be searched." *Lee v. State*, 435 So.2d 674, 676 (Miss. 1983) (quoting *Brinegar v. United States*, 338 U.S. 160 (1949)); see also *Carroll v. United States*, 267 U.S. 132 (1924).

¶19. This Court outlined its probable cause test in *Lee v. State*. There this Court stated:

> [W]e conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the **totality of the circumstances analysis** that traditionally has informed probable cause determinations . . . . The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed . . . .

*Lee v. State*, 435 So.2d 674, 676 (Miss. 1983) (emphasis added).

¶20. In the instant case, the judge had presented to him an affidavit sworn to by Officer Leggett describing the place he wished to search, what he specifically wished to search for and a signed affidavit containing a statement of underlying facts and circumstances detailing an interview with Robert Thaddison who had come to the Sheriff's Department and reported that Godbold had ran him off of the road with his car and then shoved a pistol into Mr. Thaddison's mouth while threatening him. It also details the discussion Godbold had with Officer Leggett where Godbold admitted to owning a .45 caliber Ruger semi-automatic pistol which he kept at his mobile home.

¶21. Given the totality of the circumstances of this case, there was enough information from which the issuing magistrate could make a practical, common-sense decision that evidence would be found at Godbold's mobile home. The judge determined correctly that there was probable cause to issue the search warrant.

¶22. The scope of the search warrant, however, was very limited. It listed only two items to be searched for: "a .45 caliber semi-automatic pistol, and a 9mm semi-automatic pistol." Neither was found in the search. The issue then becomes, does the plain view doctrine encompass all of the other evidence of crimes

seized during the search of Godbold's premises? Items seized in the search and introduced as evidence against Godbold at his trial included: multiple rocks of crack cocaine and the container which had contained the cocaine, also items alleged to have been stolen which included a Murray riding lawn mower, a Coleman electric generator, and a Sunbeam gas grill.

¶23. The United States Supreme Court, in dealing with the plain view doctrine has stated,

> It is well settled that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.

> An example of the applicability of the 'plain view' doctrine is the situation i n which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.

*Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). (citations omitted).

¶24. This Court echoed that reasoning in *Patterson v. State*, wherein it stated, "[a]ny information obtained by means of the eye where no trespass has been committed in aid thereof is not illegally obtained. *Patterson v. State*, 413 So.2d 1036, 1038 (Miss. 1982). The United States Supreme Court stated, "[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." *Harris v. United States*, 390 U.S. 234, 236 (1968).

¶25. However, the plain view doctrine does not parley a limited search warrant into a general search warrant. The United States Supreme Court in *Arizona v. Hicks* fleshed out the limitations of the plain view doctrine. *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, police officers responded to a call concerning a bullet being shot through an apartment floor, injuring a man on the floor below. *Id.* While searching the apartment which was the origin of the fired bullet, the police discovered "two sets of expensive stereo components and, suspecting that they were stolen, read and recorded their serial numbers - - moving some of them, including a turntable, to do so - - and phoned in the numbers to headquarters. Upon learning that the turntable had been taken in an armed robbery, he seized it immediately." *Id.* The United States Supreme Court held in *Arizona v. Hicks* that "the moving of the equipment was a 'search' separate and apart from the search that was the lawful objective of entering the apartment." *Id.* There, the United States Supreme Court found the search invalid because, "as the State concedes, the policeman had only a 'reasonable suspicion' - - i.e., less than probable cause to believe - that the stereo equipment was stolen. Probable cause is required to invoke the 'plain view' doctrine as it applies to seizures." *Id.* at 322. The Court continues, "[a] truly cursory inspection - - one that involves merely looking at what is already exposed to view, without disturbing it - - is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion." *Id.*

¶26. Taking the facts of the present case, and applying the limitations of the plain view doctrine outlined in *Arizona v. Hicks*, several of the items do not fall under the purview of plain view. None of the items admitted into evidence were listed on the search warrant. Therefore, to be admissible, they must fall under the plain view doctrine. The cocaine which was dumped into the commode by Godbold in the presence of

Officer Leggett was in the plain view of Officer Leggett. Also, the Sunbeam gas grill was in the plain view and due to distinctive white paint specks all over the grill (which resulted from the owner having left the grill in the garage while he was painting the garage ceiling) was readily identifiable by merely looking at it. This amounted to probable cause that this grill was stolen. That was confirmed when the owner (Officer Flowers) was called to the scene and positively identified it.

¶27. However, the Murray riding lawn mower and the Coleman generator did not fall under the plain view doctrine. The police at best only had a reasonable suspicion that these items were stolen. The police seized and moved those items to the Sheriff's Office for the purpose of determining whether they were stolen. This action clearly violates the scope of the plain view doctrine as defined in *Arizona v. Hicks*, 480 U.S. 321 (1987). Accordingly, the trial court's decision as to Count V of the indictment, possession of stolen property, is reversed and remanded for a new trial on that charge. Only the Sunbeam gas grill may be admitted into evidence on that count as the Coleman generator and Murray riding lawn mower evidence was illegally obtained and, therefore, will be excluded.

### IV. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DEFENDANT'S MOTION FOR MISTRIAL BASED ON IMPROPER COMMENT ON THE EVIDENCE.

¶28. Godbold argues that the trial judge made an improper comment on the evidence when he stated: "There has been some proof and may be some more proof that some of them were [stolen]." However, upon a closer reading of the trial judge's entire statement, the alleged prejudicial error is nonexistent. The trial judge stated:

> Ladies and gentlemen of the jury, you have heard testimony about some items that were taken from the home of Mr. Godbold. There is no allegation that they are stolen. There has been no proof and will be no proof, to my understanding, that all the items were stolen. There has been some proof and may be some more proof that some of them were. You are not to - - the fact that there is testimony elicited regarding these large number of items that were taken should in no way indicate to you anything other than that these items were taken and the reasoning for the law officers seizing them; the fact that they seized them proves absolutely nothing, but that it gave them a reason or the ability to search further to further their investigation. So, the fact that there is testimony given, you are not to infer that there is any other crime; in fact, there is no other crime charged of this man other than what's laid in the Indictment that is before you today . . . .

¶29. This Court has stated, "[w]hen all instructions, read together, put governing principles of law to [the] jury, there is no error." *Tillman v. State*, 144 So. 234 (Miss. 1932), *see also* *Sumrall v. Mississippi Power Co.*, 693 So.2d 359 (Miss. 1997). These instructions are correct and adequate when read in their entirety.

### V. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN DEFENDANT'S MOTION TO EXCLUDE EVIDENCE BASED ON THE STATE'S FAILURE TO PRODUCE ACTUAL PROOF OF PHYSICAL EVIDENCE OF THE STOLEN MERCHANDISE.

¶30. This issue is without merit. This Court heard this same argument in *Reed v. State*, and there held, "[t]he best evidence rule applies only to documentary evidence." *Reed v. State*, 536 So.2d 1336, 1339 (Miss. 1988) (citing *Talbert v. State*, 347 So.2d 352, 354 (Miss. 1977)).

¶31. For the foregoing reasons, the conviction of Godbold on Count V, possession of stolen property, is reversed and remanded for a new trial not inconsistent with this opinion. As to all other parts of the trial court's ruling we affirm.

¶32. **COUNT II: CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $3,500 AND COURT COSTS AFFIRMED. COUNT V: REVERSED AND REMANDED FOR A NEW TRIAL.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**