743 So.2d 415 (1999)
Rodney Laron JONES a/k/a Rodney Loron Jones, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01619-COA.
Court of Appeals of Mississippi.
May 18, 1999.
*416 William C. Stennett, Tupelo, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
*417 BEFORE McMILLIN, C.J., DIAZ, IRVING, AND PAYNE, JJ.
DIAZ, J., for the Court:
¶ 1. Rodney Laron Jones appeals the decision of the Lee County Circuit Court convicting him of armed robbery. Jones raises the following issues in this appeal: (1) whether the trial court erred in denying his motion for a directed verdict both at the close of the State's case, after the close of the entire case, and for denying the JNOV, (2) whether the evidence presented at trial was sufficient to establish the crime of armed robbery and whether the jury's verdict was against the overwhelming weight of the evidence, (3) whether the court erred in not suppressing his statement, (4) whether the court erred in allowing the testimony of Sherry Watkins about a telephone conversation she had with him, and (5) whether the trial court erred in refusing to grant a cautionary jury instruction with respect to accomplice testimony. Finding no error, we affirm.

FACTS
¶ 2. On July 20, 1996, Kashun Bougard, the manager of the Captain D's restaurant, was robbed at gunpoint at closing time. Bougard testified that he gave the money to a masked assailant because he feared for his life because a gun was pointed at his neck during the crime.
¶ 3. Billy Ray Collins, a master sergeant with the Tupelo Police Department, was working at his part-time job on this particular night as a paramedic with an ambulance service. Collins testified that Wesley Williams and he were driving the ambulance south on Gloster Street when they noticed an altercation in the parking lot of Betty's Restaurant. Collins stated that they pulled over, and he asked his dispatcher to notify the police that an altercation was in progress. At that point, Collins stated that a man pulled up next to his parked ambulance and told him that he thought Captain D's was being robbed.
¶ 4. Collins testified that he continued driving south and parked in front of an office adjacent to Captain D's. Collins stated that from this vantage point, he could see someone standing at the drive-through window wearing a ski mask, a dark colored shirt, and light colored gloves. Collins switched channels on his radio in order to speak directly with the police dispatcher. He informed them of his location. Collins noticed that the suspect was walking to the rear of the store, so he tracked him on foot around to the back of the Captain D's where they nearly collided. At this point, Collins and the suspect looked at each other, and the suspect threw his gloves and mask down and ran towards the back of Betty's Restaurant. Collins pursued the suspect until he fled west toward Van Buren Street.
¶ 5. Collins returned to Captain D's to protect the crime scene. By radio communication, he was informed that a patrol officer was in pursuit of a vehicle that was leaving Van Buren Street. Collins also noticed that the crime scene had changed considerably since he had chased the first suspect towards Betty's. He found broken glass on the ground at the north side of the building and money drifting around the parking lot.
¶ 6. While Collins was chasing the first suspect, Williams walked to the access door in the rear of the building where the employees enter and exit. As he approached the northwest corner of the building, Williams heard a crash and saw a tall, slender man jump out of a window and start running westward. Williams testified that the suspect pointed a weapon at him and threatened his life. Williams did not pursue him, although he observed the suspect run behind Captain D's, behind an office building, and toward a retaining wall.
¶ 7. Collins remained at Captain D's until Lieutenant Bobby Stubbs and Detective Brian Jones arrived. Collins then went to where a vehicle had been stopped immediately *418 after the armed robbery and identified the suspect as the person he chased from the scene. This particular suspect was identified as Patrick Watkins.
¶ 8. Officer John Clark testified that as he approached Van Buren Street in his patrol car it was broadsided by a blue Cadillac that exited from the rear of an office adjacent to Captain D's. Officer Clark stated that he pursued the vehicle until it stopped suddenly. The occupants emerged from the car and attempted to flee on foot. Officer Clark's vehicle collided with the suspects's parked car. Officer Clark briefly chased Watkins into a residential district, and then he returned to the wrecked Cadillac to secure the scene. Although the other occupant had fled the scene, Officer Clark recovered money from the floorboard of the car, money outside the passenger side of the vehicle, and gloves and an automatic handgun on the roadway. Watkins was apprehended under a carport on Mitchell Street.
¶ 9. Sherry Watkins, Patrick Watkins's mother, testified that her son was at her house between 9:30 and 10:00 that night. Watkins's friend and the defendant herein, Rodney Laron Jones, drove a blue Cadillac to the Watkins residence that night. Sherry Watkins said she did not see Jones or her son again that night. However, she stated that Jones telephoned her the next day and told her that Watkins and he had tried to rob Captain D's. Sherry Watkins also stated that Jones told her he could not come over to talk about the incident because the police had wrecked his car.
¶ 10. Captain Billy Murphy, a shift captain for the Tupelo Police Department, testified that he received three telephone calls from an informant on the night of the armed robbery. Acting on information received from these calls, Captain Murphy and Lee County deputies went to an apartment complex in Guntown to look for Jones. Jones was found under a bed, arrested pursuant to a warrant, and taken into custody. Thereafter, Jones gave a confession about his involvement in the robbery to Detective Bart Aguirre.
¶ 11. At trial, Jones's defense was that he was at his stepmother's, Joanne Jones, house. She testified that Jones was at her house on the evening of the robbery. This was corroborated by Joanne Jones's twelve year old son and the brother of Jones. However, she acknowledged that she was asleep between 10:00 p.m. and 2:00 a.m. Joanne Jones also testified that she was currently married to Sherry Watkins's ex-boyfriend which elicited some harsh feelings in the beginning of the relationship but that they were all cordial toward one another now.
¶ 12. Latonya Edwards, Jones's girlfriend, testified that she saw Jones at Joanne Jones's house on the morning after the robbery. Edwards stated that she did not notice any cuts or scratches on his body.
¶ 13. Jones took the stand and testified that he was at home with his mother and little brother at the time of the robbery. He stated that he allowed Watkins to borrow his car. He also denied giving the police a confession. During cross-examination, Jones conceded that he had told the arresting officers that he had been somewhere other than his mother's house at the time of the robbery.
¶ 14. This case was tried before a jury in Lee County Circuit Court. Jones's motion for a directed verdict at the close of the State's case-in-chief was denied. After Jones presented his defense, he made a motion to renew his motion for a directed verdict which was denied by the trial court. The jury returned a guilty verdict against Jones for armed robbery. The judge imposed a sentence of thirty-five years imprisonment in the Mississippi Department of Corrections. The motion for a JNOV, or in the alternative, a motion for a new trial was denied. Feeling aggrieved, Jones files this appeal.

*419 DISCUSSION
I. WHETHER THE TRIAL COURT ERRED IN DENYING JONES'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE-IN-CHIEF, AFTER THE CLOSE OF ALL EVIDENCE, AND FOR DENYING THE JNOV
II. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE CRIME OF ARMED ROBBERY AND WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 15. Since Jones's first assignments of error raise similar issues, we will address them together.

A. Sufficiency of the Evidence
¶ 16. A challenge to the sufficiency of the evidence requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss.1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion for a directed verdict and JNOV. Id. If he concludes that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for directed verdict and JNOV; that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989). Of course, the opposite is also true. We may reverse the trial court's ruling only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 17. In the case sub judice, legally sufficient evidence existed to find Jones guilty of armed robbery beyond a reasonable doubt. The State made out its prima facie case by showing that Jones admitted his participation to Sherry Watkins, that a large amount of cash was recovered from his car that was pursued by a police officer, and that gloves and a gun were found beside his abandoned vehicle. Furthermore, several police officers who examined the crime scene testified. Finally, the State submitted as evidence Jones's detailed confession of the crime. Since the State put forth sufficient, credible evidence, the trial judge was required to leave the final decision of guilt or innocence to the jury. We affirm the trial judge's ruling with regard to the motion for a directed verdict.[1]

B. Weight of the Evidence
¶ 18. The next motion we will review is that for a new trial. This goes to the weight of the evidence and not its sufficiency. In reviewing this claim, this Court must examine the trial judge's denial of Jones's motion for a new trial. Jones v. State, 635 So.2d 884, 887 (Miss.1994). The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice. May, 460 So.2d *420 at 781. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State, 585 So.2d 693, 695 (Miss. 1991). The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Id. Likewise, the reviewing court may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial. Id. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Jones's motion for a new trial. Accordingly, we dismiss this assignment of error as lacking in merit.

III. WHETHER THE COURT ERRED IN NOT SUPPRESSING JONES'S STATEMENT
¶ 19. The defendant also argues that the court erred in not suppressing his statement. The only authority offered by Jones in support of his proposition is Mississippi Rule of Evidence 403, which authorizes the trial court to exclude relevant evidence if the probative value is substantially outweighed by the danger of unfair prejudice. Although this is a correct assertion of the law, Jones cites no legal authority in support of this particular assignment of error. The supreme court has repeatedly stated that it is the appellant's duty to provide authority in support of his claims of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997). Accordingly, the defendant's failure to cite authority for this issue preludes appellate review.
¶ 20. Nevertheless, a review of the merits of this issue shows that this assignment of error is without merit. At the motion hearing, Detective Aguirre testified that he informed Jones of his rights, inquired whether Jones understood them, witnessed Jones reply affirmatively by checking the appropriate boxes on the waiver-of-rights form, and then witnessed Jones sign it. Thereafter, Detective Aguirre interviewed Jones about the robbery at Captain D's and typed Jones's account on a statement form which Jones signed.
¶ 21. Jones took the stand and testified that he did not sign the form. The trial court declared that the sole question with regard to the statement was whether Jones signed it. Since that issue was in dispute, the court allowed the jury to determine what weight and credibility to give the witnesses and their testimony. The fact that a defendant denies making a statement does not affect the question of admissibility, but simply creates a jury issue. Talbert v. State, 347 So.2d 352, 354 (Miss.1977). Since Jones's denial generated a factual question properly resolved by a jury, this issue is without merit.

IV. WHETHER THE COURT ERRED IN ALLOWING THE TESTIMONY OF SHERRY WATKINS ABOUT A TELEPHONE CONVERSATION SHE HAD WITH JONES
¶ 22. Jones's fourth proposition is also unsupported by authority except an abbreviated discussion of the probative versus prejudicial value of the telephone conversation in question. The precepts of Drennan enunciated above hold true here as well. Once again, it must be made clear that questions concerning the admissibility of evidence are distinct from questions about the weight of evidence. Talbert, 347 So.2d at 354. The denial of authenticity of a conversation does not render it per se inadmissible. Instead, it creates an issue of fact to be determined by a jury. The credibility of a witness is for the jury to decide. Sudduth v. State, 562 So.2d 67, 70 (Miss.1990).
¶ 23. Jones also raises additional concerns that Sherry Watkins did not properly identify his voice. Under Hurst *421 v. State, 240 So.2d 273, 276 (Miss.1970), testimony by a witness who has heard the voice in question is regarded as a legitimate and competent means to establish identity. Furthermore, the validity of such identification testimony is for a jury to determine. Estes v. State, 533 So.2d 437, 439 (Miss.1988). Here, Sherry Watkins testified that she knew Jones, that he was a friend of her son's, that he had been a guest in her house, and that she recognized his voice over the telephone. Therefore, it was proper for the jury to hear the testimony of this witness and to consider the credibility of the witness as the finder of fact. Despite the procedural bar, this assignment of error is without merit.

V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT A CAUTIONARY INSTRUCTION WITH RESPECT TO ACCOMPLICE TESTIMONY
¶ 24. Where no evidentiary basis exists for a particular jury instruction, it will be properly denied. Davis v. State, 684 So.2d 643, 657 (Miss.1996). The granting of a jury instruction such as the one in the case sub judice is within the trial court's sound, although not absolute, discretion. Brown v. State, 682 So.2d 340, 346 (Miss.1996). Patrick Watkins did not testify at Jones's trial nor was his statement admitted into evidence. Since no accomplice testimony in any form was presented at trial, the trial court properly denied the cautionary jury instruction. Accordingly, this assignment of error is also without merit.
¶ 25. THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE AS AN HABITUAL OFFENDER TO THIRTY-FIVE YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO LEE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] Jones asserts, in part, that the trial court erred in denying his renewal of his motion for a directed verdict at the close of the State's case. However, Jones waived this issue by presenting evidence in his own behalf, i.e. presenting his case-in-chief. Holland v. State, 656 So.2d 1192, 1197 (Miss.1995). Thus, Jones's issue about the weight and sufficiency of the evidence must be considered in view of all of the evidence that was presented. Wetz v. State, 503 So.2d 803, 808 (Miss.1987).